GEO. LEAVITT ET AL. V. E. R. SIZER.

[FILED JUNE 30, 1892.]

1. **Review**: OBJECTIONS NOT RAISED BELOW. Where the clerk of the court and deputy sheriff were interested in the result of the action, and hence in drawing the jury and talesmen, but no objection was made until after the trial, *held*, that the objections should have been presented to the trial court before the trial, otherwise they cannot be considered by the supreme court.

2. A finding of fact set out in the opinion *held* contrary to the weight of evidence.

3. Instructions copied in the opinion *held* to be erroneous.

ERROR to the district court for Lancaster county. Tried below before TIBBETS, J.

Leavitt v. Sizer.

*Leese & Stewart,* for plaintiff in error, cited: *Savage v. Stevens,* 126 Mass., 207; *Morgan v. Hardy,* 16 Neb., 427; *Bollman v. Loomis,* 41 Conn., 581; Bigelow, Frauds, 496; 2 Herman, Estoppel, sec. 1078.

*Abbott, Selleck & Lane, contra,* cited: *Sycamore Co. v. Grundrad,* 16 Neb., 537; *City of Lincoln v. Holmes,* 20 Id., 47.

MAXWELL, CH. J.

This is an action upon three promissory notes, dated December 17, 1886, one for $500, due in three years, with interest at ten per cent, payable semi-annually, and two coupon notes, each for the sum of $25. These notes were secured by a B. & M. land contract for the northwest quarter and west half of the northeast quarter of section 37, township 3, range 15 west. The notes were given to W. A. Selleck and by him indorsed to Sizer.

The defendants below (plaintiffs in error) allege in their answer "that on or about the 17th day of December, 1886, defendants conveyed to plaintiff the following described real estate, situate in Lancaster county, Nebraska, viz.: The west half of the northeast quarter of section 22, township 11, range 6 east, of the value of $2,000, with incumbrance of $500; and, in consideration of said conveyance, the plaintiff on said date assigned to defendant George Leavitt a certain contract for the sale of the following described lands of the Burlington & Missouri River Railroad Company in Nebraska with plaintiff, to-wit: The west half of the northeast quarter and the northwest quarter of section 33, township 3, range 15 west, of the value of $500, and no more, and upon which there was owing from plaintiff to said railroad company, for purchase money under said contract, the sum of $473, the value of plaintiff's interest therein by him assigned being no more than $27. In negotiating for the exchange of said

9

lands one C. W. Hoxie, a brother-in-law of plaintiff, acted for and on behalf of plaintiff, was plaintiff's duly authorized agent, and his acts as such were by plaintiff approved and ratified. To induce defendants to convey said lands to plaintiff, the plaintiff and said Hoxie, intending to cheat and defraud defendants, falsely and fraudulently represented to these defendants that the said railroad lands in Franklin county, covered by said contract, were of the value of $10 per acre, and of the aggregate value of $2,400, and of the value of $2,000 over and above the sum owing thereon for purchase money, and that the same was good, smooth, tillable land; that said contract was ample and sufficient security for a loan of $500, and that plaintiff could and would procure a person to make such a loan upon the security of said contract if defendants would convey said Lancaster lands to plaintiff. And further to execute and carry out their said intent to cheat and defraud defendants, plaintiff furnished the money therefor to and procured one W. A. Selleck to make said loan of $500 to defendants, who falsely pretended for himself to loan the same to defendants upon the faith and credit of a conditional assignment of said railroad land contract as security for the repayment thereof. At the time of making said conveyance and exchange of lands defendants were not acquainted with the value of said railroad lands in Franklin county and had no means of knowing the same, except the aforesaid representations of plaintiff, Hoxie, and Selleck.

"Relying on said representations, and believing them to be true, defendants were induced to and did convey said Lancaster county lands to plaintiff and paid plaintiff $27, all of the value of $2,027, for no other consideration than the assignment to them by plaintiff of the executory contract for the conveyance of the aforesaid railroad land in Franklin county, and at the same time defendants executed the note mentioned in plaintiff's petition.

"That said representations of plaintiff, Hoxie, and Sel-

leck, were wholly false as plaintiff well knew; said railroad lands were not of the value of $10 per acre, nor $2,400 in the aggregate, nor $2,000 above unpaid purchase money; was not good, smooth, tillable land, and said W. A. Selleck did not make said loan of $500 on the faith and security of said contract, but on the contrary said lands were not in fact of greater value than $2.50 per acre, $500 in the aggregate, and $27 above unpaid purchase money due thereon, and was rough, broken by sloughs and canyons and untillable; the said contract did not afford sufficient nor ample security for a loan of $500 or any other sum, all of which the plaintiff and said Hoxie and Selleck well knew; and fraudulently concealing the same from the defendants the plaintiff by collusion procured said Selleck to make said loan and get defendants' said note therefor for plaintiff's own use and benefit, in pursuance of a concerted and collusive scheme entered into by plaintiff and C. W. Hoxie and W. A. Selleck to cheat and defraud defendants; that by reason of the premises defendants have suffered damages in the sum of $1,000."

On the trial of the cause the jury returned a verdict in favor of Sizer for the sum of $594.58, and made special findings as follows:

"First—What was the value of the Franklin county land at the time of the exchange, over and above the amount due the railroad? . Five hundred and twenty-seven dollars.

"Third—Did C. W. Hoxie in negotiating the exchange, act in the interest of and in behalf of plaintiff Sizer? Yes; in consummating this exchange.

"Fourth—Did C. W. Hoxie, in negotiating the exchange, act for both plaintiff and defendant? Yes; in consummating this exchange.

"Fifth—Is the Franklin county land rough and untillable? Yes.

"Sixth—Were Sizer and Hoxie, or either of them, in-

formed, at the time of the exchange, as to the true character of the Franklin land? No.

"Seventh—Did Hoxie do or say anything that would justify Leavitt in believing that the Franklin county land was of sufficient value, above incumbrance, adequately to secure a loan of $500? Yes."

It is claimed on behalf of the plaintiffs in error that because Sizer was clerk of the court at the time of the trial and Hoxie deputy sheriff, and as one-half of the jurors were talesmen, that, therefore, the jury was in fact impaneled in the interest of the plaintiff below. Where the officers of the court, particularly those who assist in drawing the jury, are interested in the result of an action, the court should take every precaution to prevent a failure of justice. Unless a trial is conducted in a fair and impartial manner, and before disinterested and unbiased jurors, it is liable to result in a wrong verdict. Constitutional guarantees of a fair trial before an impartial jury would amount to very little unless the courts will give effect to the constitution. A party complaining, however, must bring the matter to the attention of the court at the trial in some of the modes provided by law, otherwise the objections are waived.

The testimony tends to show that Mr. Sizer had visited the land in 1885 and knew that it was rough and untillable and the special finding to the contrary is against the clear weight of evidence. Hoxie professed entire ignorance as to the character of the land, although it is pretty evident that he knew its general character.

Third—The fourth instruction given by the court on its own motion is as follows:

"The jury are further instructed that this action is founded upon a charge of fraudulent representations, made by plaintiff and his agents to defendants; in order to constitute such a fraud within the meaning of the law, it must be clear by a preponderance of evidence that the plaintiff

or his agents intended to commit, and did commit, a fraud upon the defendants in manner complained of in defendant's counter-claim, otherwise the defendant cannot recover upon his counter-claim.  The defendant is not entitled to anything upon this counter-claim unless you believe from the evidence that the plaintiff or his agents made the representations alleged; that such representations were false; that the parties making them knew they were false, or had no apparently good reason to believe them to be true; that they were made with the intent to defraud the defendants, and defendants were thereby induced to make the trade in question, and sustained damages by means thereof."

The words " that the defendants are not entitled to recover anything on their counter-claim unless such representations were false, and that the parties making them knew they were false," were liable to mislead the jury.   The rule is that where a party without knowing whether his statements are true or false, makes an assertion as to any particular matter upon which the other party has relied and has suffered damages, the party thereby defrauded will be entitled to relief. (*Phillips v. Jones,* 12 Neb., 215; *Smith v. Richards,* 13 Pet., 38; *Trumball v. Gadlen,* 2 Strobh. Eq., 14; *McFerron v. Taylor,* 3 Cranch, 281.) The court therefore erred in giving this instruction.

The court also erred in giving the following instruction:

" Before you can find for the defendant you must find, either that the plaintiff personally made the representations claimed by the defendant, or that said Hoxie was the agent of the plaintiff, or that he made said representations and that the plaintiff, knowing what representations had been made by said Hoxie, afterwards ratified them."

This instruction is clearly wrong.  A principal who retains the benefit of a contract made by his agent thereby adopts all the instrumentalities employed by such agent to effect the contract.   In other words, a party cannot retain the benefits derived from the fraudulent conduct of his

agent without being charged with the instrumentalities employed to accomplish the purpose. (*Rogers v. Empkie Hardware Co.*, 24 Neb., 653; *N. E. Mtge. Sec. Co. v. Henderson*, 13 Id., 574; *McKeighan v. Hopkins*, 19 Id., 33.)

There are other errors which need not be noticed. The judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.