LITTLE ROCK RAILWAY & ELECTRIC COMPANY *v.* BRACY.

Opinion delivered March 2, 1914.

1.  STREET CAR COMPANIES—EJECTING PASSENGER—LIABILITY.—Where
    plaintiff, with knowledge that defendant company required that
    dogs carried on its cars must be tied on the front platform, neg-
    lected to tie his dog, and the dog was put off by the motor-
    man, and following an altercation with the motorman, wherein
    the latter threatened to eject the plaintiff, and plaintiff invited
    him to "get busy," whereupon the motorman ejected him from

the car; *Held*, in an action for damages for personal injuries caused by the motorman's act, plaintiff's acts did not justify the motorman in ejecting him, and the question was properly submitted to the jury. (Page 619.)

2.  STREET RAILWAYS—EJECTING PASSENGER—LIABILITY.—A street railway company is liable for damages for injuries received by a passenger, if the motorman wrongfully ejects the passenger, following an altercation over the ejecting of the passenger's dog, although plaintiff was attempting to carry the dog on the car, in violation of the rules of the company, of which he had knowledge. (Page 620.)

3.  CARRIERS—DUTY TO PASSENGERS—MISCONDUCT OF EMPLOYEE.—A street railway company is liable for damages received by a passenger, when he is thrown from its car by the motorman, without lawful cause. (Page 620.)

4.  CARRIERS—ASSAULT ON PASSENGER—EXCESSIVE FORCE.—Although a passenger first assaults the motorman of a street car, the latter is not justified in using any more force than appeared necesary under the circumstances, in protecting himself from the passenger, and where the motorman ejects plaintiff from the car, the company will be liable for the injury resulting from the use of excessive force. *Semble.* The rule might be different if the question of ejection from the car were absent. (Page 621.)

5.  CARRIERS—ASSAULT ON PASSENGER—LIABILITY.—The use of words by a passenger to an employee of a street railway company, however provocative, will not justify an assault on the passenger, and will not relieve the carrier from liability for injuries resulting from an assault. (Page 622.)

6.  CARRIERS—EJECTING PASSENGER FROM CAR—EXCESSIVE FORCE.—Where an employee rightfully ejected a passenger from a street car, if excessive force is used, the carrier will be liable for an injury resulting to the passenger. (Page 622.)

7.  APPEAL AND ERROR—INSTRUCTIONS—HARMLESS ERROR.—Appellant can not complain of the giving of an erroneous instruction, when it requested an instruction to the same effect. (Page 623.)

8.  STREET RAILWAYS—CARS—PURPOSE OF OPERATION.—Street cars are operated for the carriage of passengers, not for the transportation of freight or domestic animals, and when the company permits a passenger to carry a dog on a car under certain rules, the employees have to eject the dog when the passenger neglected to comply with the rules. (Page 624.)

9.  CARRIERS—EJECTING PASSENGER FROM CAR—LIABILITY.—Plaintiff brought his dog on to a street car, but did not observe the rules of the company with respect thereto, of which he had knowledge. The motorman removed the dog from the car, and ejected the

passenger, following an altercation. *Held*, it was prejudicial error to charge the jury that the motorman committed the first wrong by removing the dog from the car. (Page 624.)

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk*, Judge; reversed.

*Rose, Hemingway, Cantrell & Loughborough*, for appellant.

1. The first instruction was abstract and misleading. The issue in the case was not an unproved, undisputed mistreatment of an unoffending passenger, but whether or not the motorman wrongfully ejected him; whether the plaintiff provoked or invited the ejection and whether the motorman used more force than was necessary in ejecting him. 14 Ark. 530; 69 Ark. 130; 37 Ark. 591; 77 Ark. 569; 85 Ark. 394; 80 Ark. 165.

There is nothing in the instructions given at appellee's request to cure the error in giving the above instruction because they still left the jury free to generalize and speculate as to what would be mistreatment and lawful cause. *Supra;* 30 Ark. 376; 90 Ark. 111; 57 Ark. 203.

2. The undisputed evidence is, and appellee admitted that he knew, that there was a rule of appellant company which required dogs to be tied on the front platform. An instruction, therefore, was improper which submitted to the jury the question of fact whether or not there was such a rule. 67 Ark. 147; 69 Ark. 497; 72 Ark. 401; 78 Ark. 565; 88 Ark. 25; 89 Ark. 182. The fourth instruction which errs in this respect is further erroneous in telling the jury that if the company allowed its servant to continue to act in violation of the rule, such conduct would be a waiver of the rule by the company. There was no evidence that such violation was ever brought to the notice of the company or its officers. 49 Ark. 359; 59 Ark. 395; 96 Ark. 564. The rule was a reasonable one, and if appellee knew of it, and he admits it, he was bound by it, and it was his duty to comply with it.

2 Nellis on Street Railways, ¶ 333; 84 Pac. (Wash.) 588; 89 N. Y. Sup. 589.

3. The fifth instruction is clearly erroneous and prejudicial. It so coupled together the ideas of the wrongful removal of the dog and the alleged unlawful assault, that it left the jury free to believe that, the removal of the dog being improper, the assault was likewise improper.

4. Appellant was entitled to a peremptory instruction in its favor. Where a person boards a car with the intention of violating a reasonable rule of the company, and becomes involved in a controversy with the motorman because the latter enforces the rule and then invites the motorman to put him off, he is entitled to no standing in court. 51 Ark. 354; 82 Ark. 130; 49 Ark. 357; 97 Ark. 139; 77 Ark. 106; 93 Ark. 244; 28 S. E. (Ga.) 508.

*Marshall & Coffman,* for appellee.

1. If there was anything indefinite or misleading in the use of the words "mistreatment" and "lawful cause" in the first instruction, attention should have been called to it by specific objection or by offered instruction. Appellant not having done so, the objection is waived. 88 Ark. 225; 84 Ark. 377; *Id.* 399; 96 Ark. 184. If the first clause of the instruction was abstract, it was cured by those given at appellant's request. 93 Ark. 598. Instructions 2 and 3, given at appellee's request, and others given for appellant, sufficiently define lawful cause.

2. Appellant having requested and had given an instruction submitting to the jury the same matters it now complains of in instruction 4, it is in no position to urge such a complaint. Invited error is no ground of objection. 95 Ark. 209; 88 Ark. 172; *Id.* 138. A continual violation of a rule such as is shown here will be presumed to have come to the notice of the company's officers. 1 Labatt, Master & Servant, §§ 232, 233.

4. There is no merit in the objection to instruction 5. While the rule set up by appellant is not an unreasonable one, yet its enforcement should certainly

be in a proper and reasonable way and not by wanton injury to the property of the party violating it.    69 N. W. (Ia.) 532; 79 Ark. 85.

McCULLOCH, C. J.    The plaintiff, H. B. Bracy, instituted this action against the Little Rock Railway & Electric Company to recover compensation for personal injuries received by him on account of his alleged forcible and wrongful ejection from a street car by the motorman, one of defendant's servants.

The jury awarded damages in the sum of $750, and defendant has appealed.

Plaintiff resided in the city of Little Rock, and owned a dog, which he frequently carried with him on the street cars on trips from his place of residence to the business section of the city.    His testimony shows that he carried the dog on the street car several trips each week.    The company had a rule, whereby dogs were permitted to be carried free for passengers on condition that a permit be obtained at the company's office, and that the dog be tied on the front platform of the car.    The condition was expressed in the written permit which patrons obtained on application at the company's office.    Plaintiff obtained a permit and placed his dog on the front platform, but did not tie the dog as required by the rule.    He had notice of the requirement, however, and on the day before the trip involved in this controversy the motorman told him that the dog would not be carried again unless the rule was complied with.  .There was no dispute in the case as to the establishment of the rule with reference to the manner in which dogs should be carried, nor was there any dispute as to plaintiff having notice of the rule. On the occasion in question, he boarded the street car with his dog, and was permitted to enter by the conductor, who stood on the rear platform.    He paid his fare and handed the permit to the conductor and passed on to the front of the car and let the dog out on the platform. He then stepped back on the inside of the car and stood near the door where he could watch the dog.    After the car had traveled about three blocks the motorman opened

the side door leading from the platform and put the dog off the car. The plaintiff walked out on the platform and accosted the motorman, and an altercation between the two followed, and plaintiff was ejected. He was thrown, or fell, on the paved street, his knee striking the hard substance, and he was seriously injured.

There is a sharp conflict in the testimony as to the motorman's method of ejecting the dog and also as to the circumstances leading up to the altercation. The plaintiff and other witnesses testified that the motorman kicked the dog from the car after he had opened the door, causing the dog to yelp from fear or pain; whilst, on the other hand, the motorman and other witnesses testified that he did not kick the dog, but opened the door and led the dog from the platform by holding to its collar. The plaintiff claimed that the dog was kicked off before the car came to a stop; whilst the motorman testified that he led the dog from the car after a stop had been made at a street crossing to permit a passenger to board the car. The plaintiff relates the circumstances which followed in this language: "I went out the front door— it was, maybe, two or three seconds; I was kind of surprised. But I opened the door and went out there, and says, 'Here, old partner, you—that's my dog; you ought not to kick her off.' And he says, 'Well, you ought to have her tied.' And one word brought on another, and he says, 'Damn you, I'll put you off,' and I says, 'Get busy,' and he got busy, and we went off on the ground together, and I lit on my left knee on the car track." The motorman testified that he didn't observe the dog when it was first led out on the platform, but after the car had proceeded about a block he looked around and saw the dog was not tied, and that at the first stop at a street crossing he opened the doors and led the dog off. He gives the following account of what then transpired: "I stepped back up to shut the gate and young Mr. Bracy rushed to the door, jerked it open, threw his right hand up on my shoulder and says, 'That's my dog you are putting off that car.' I says, 'I don't care whose dog it is;

I notified you yesterday you couldn't take him without tying him.' I says, 'I don't care whose dog it is; you can't take him on this car without tying him.' He came down on the platform and I says, 'Well, I have done put him off,' and he says, 'Yes, and you are going to have me to put off.' I says, 'I guess if I have you to put off I will get you off.' He had my coat lapel; so I just took him by the wrists of each arm—the gate was open—and I started to put him off. But I went off backwards and he came off forwards after me.''

It is insisted, in the first place, that the evidence is not sufficient to sustain the verdict, in that the undisputed evidence shows that plaintiff was advised of the rule concerning the method of carrying dogs and deliberately and intentionally violated the same, and that when the altercation with the motorman arose he, according to his own testimony, acquiesced in the expressed determination of the motorman to put him off and invited the motorman to ''get busy.''

We can not agree that there was no evidence to sustain the verdict. It is true that the evidence is undisputed that plaintiff knew of the existence of the rule and that he violated it. He does not deny that he knew of this rule and admits that this particular motorman told him the day before this occurrence that he could not carry his dog on the car again unless he complied with the rule of the company by tying it on the front platform. He states that if he had known that this particular motorman was the one on that car he would not have boarded it. But his violation of the rule with respect to the method of carrying his dog did not justify the servants of the company in ejecting him. He paid his fare as a passenger, and, even though the servants of the company had the right to put the dog off the car, they had no right to eject the passenger as long as he claimed the privilege of riding, and had paid his fare.

The question in this case does not involve a claim for damages on account of the ejection of the dog, but for the ejection of the passenger, and, regardless of the man-

ner in which the dog was ejected, if the motorman wrongfully ejected plaintiff from the car while he was a passenger, then the company is liable for the injury that ensued. The evidence adduced by plaintiff tends to show that the motorman, after kicking the dog from the platform, then, forcibly and wrongfully ejected plaintiff from the car because he objected to the dog being put off. A mere protest by the plaintiff, whether he was within his rights or not, did not justify his ejection from the car. Nor did he forfeit his rights as a passenger by protesting against the removal of the dog and acquiescing in the motorman's attempt to remove him. It was evident from the testimony that he did not voluntarily leave the car nor consent to the motorman ejecting him. The angry altercation was then on. According to his testimony, he merely challenged the motorman to carry out his threat. Under those circumstances, the motorman owed him a higher duty than that of accepting his challenge and engaging in fight with him and should not have attempted to eject him unless he was doing something that authorized it. Merely protesting against the removal of the dog and challenging the motorman, in response to the latter's threat, did not authorize the ejection. The testimony of the motorman is sufficient, if accepted as true, to warrant the ejection; because he states that the plaintiff had taken hold of him and that his conduct was such that it became his duty to eject him. According to the motorman's testimony, plaintiff's conduct amounted to a distinct challenge for a fight and an assault upon the motorman which afforded sufficient justification for the ejection. But as there was a conflict in the testimony, those questions were left to the jury, and it was proper to do so.

There are several assignments of error in regard to the court's charge to the jury.

One relates to instruction No. 1, which reads as follows:

"It was the duty of the street railroad company to protect its passengers from the mistreatment of its em-

ployees, whether acting within the scope of their employment or not.   If you find from the evidence that the motorman took hold of plaintiff and jerked or threw him to the ground, or otherwise assaulted him without lawful cause, and thereby damaged him in any amount, then your verdict will be for plaintiff.''

It is urged that this instruction is prejudicial because the language is too indefinite in referring to ''mistreatment'' of passengers and leaves the jury to roam at will in determining what would constitute such mistreatment. *Little Rock Railway & Electric Co.* v. *Goerner,* 80 Ark. 158-165.

We do not think the instruction is open to that objection.   While the first clause is indefinite, it is amplified by the last clause, which specifically submits to the jury the question whether or not the motorman wrongfully assaulted plaintiff and ejected him from the car. We do not think that any prejudice resulted from the indefinite language of the first clause in the instruction.

Instruction No. 3 was objected to, and it reads as follows:

''If you find from the evidence that plaintiff took hold of or otherwise assaulted the motorman first, still this would not justify the motorman in using against plaintiff any more force than appeared necessary to him, as a reasonable man, under the circumstances and surroundings, to protect himself from such assault or further violence at the hands of plaintiff; and in such case, if you find from the evidence that the motorman did use such excessive force in repelling such assault, then your verdict will be for plaintiff.''

This action was based upon an alleged wrongful ejection from the car, and the testimony tends to establish that cause of action.   There is no claim that the motorman assaulted the plaintiff except in forcibly removing him from the car.   We do not think, however, that there is any prejudicial error in the instruction as referring merely to an assault, and not to a forcible ejection, and it correctly limited the justification of the mo-

torman to the use of only such force as appeared necessary under the circumstances to protect himself from the violence offered by the plaintiff. That is the correct statement of the law when dealing with the question of ejection from the car, for, even if the motorman was within his duty and right in ejecting him from the car, the company would only be responsible for the injury which resulted from a use of excessive force. We are not sure that the same rule would apply to an assault which did not constitute ejection from the car. It may well be doubted whether a passenger can claim compensation for excessive force used in resisting an assault which he had himself provoked and made necessary by an assault upon a servant of the carrier, where the question of wrongful ejection from the car is not involved. In that case it becomes a mere personal matter between the passenger and the servant, and if excessive force is used it is questionable whether the company is responsible for it. *Harrison* v. *Fink,* 42 Fed. Rep. 787; *Peavy* v. *Railroad Company,* 81 Ga. 485; *O'Brien* v. *St. Louis Transit Co.,* 185 Mo. 263. Of course, the use of words, however provocative, does not justify an assault and would not relieve the carrier of liability for injuries resulting from an assault committed on a passenger by a servant of the carrier. *Leavitt* v. *Sizer,* 35 Neb. 80; *Birmingham Ry. & Elec. Co.* v. *Baird,* 130 Ala. 334.

But, as before stated, it is undoubtedly the law that, even where an ejection from a car is rightful, if excessive force is used, the carrier is liable for the injury, and as this case only involved the question of ejecting the plaintiff from the car we think that instruction No. 3 was not prejudicial. For the sake of accuracy, however, the instruction should have been so framed as to direct the minds of the jury to the real issue of the case, which was that of whether or not the passenger was rightfully or wrongfully ejected from the car, and, if rightfully done, whether excessive force was used.

Complaint is made of another instruction submitting

the question to the jury to determine the existence of the rule and whether plaintiff had notice of it.

It was unnecessary and improper to submit that question, for there was no dispute on that point. But in one of the defendant's instructions it used language which amounted to a submission of that question, and it can not, therefore, complain that a similar instruction was given at the request of plaintiff.

There is another assignment, which we think is well founded, and that relates to the giving of the following instruction:

"5. Although you may find from the evidence that there was a rule of the company in force requiring dogs to be tied while on the cars, and that plaintiff had notice of such rule, and violated same, still this would not justify the motorman in putting off the dog as he did, or in making an assault on plaintiff, if you find from the evidence that he made such assault, the proper course in such case being to request him to tie his dog, and, if he did not do so, to stop the car at a regular crossing and require both to get off the car."

The effect of this instruction was to tell the jury unqualifiedly that the motorman was not justified in putting the dog off the car. The use of the words "as he did" evidently carried the idea to the minds of the jury that the court was deciding that the particular manner in which the dog was put off was wrongful, and, even if those words had been omitted from the instruction, still the other language amounted to telling the jury that the violation of the rule by plaintiff would not justify the motorman in removing the dog from the car. Now, the motorman's testimony is that he merely led the dog from the car when a stop was made at a street crossing. Street cars are operated for the carriage of passengers, not for the transportation of freight or domestic animals. The company permits, as a mere privilege, the carriage of dogs, and when the rules with respect to such privilege were violated by appellee the company's servants had the right to remove the dog from the car, and the

court erred in telling the jury that he had no right to do so. The real question in this case, as we have already shown, related, not to the removal of the dog, but to the ejection of the plaintiff 'from the car. There was a serious conflict in the testimony on this point, the motorman's testimony being sufficient to show that the plaintiff was in the wrong and was guilty of such boisterous and turbulent conduct as justified his removal. This instruction, in effect, put the motorman in the wrong and was calculated to impress the jury with the idea that the plaintiff was justified in his forcible and boisterous protest against the removal of the dog. While the removal of the dog is not the basis of the cause of action, yet it is a necessary part of the narrative of the circumstances which led up to the altercation between the parties, and it necessarily prejudiced the defendant for the court to tell the jury that the motorman committed the first wrong by removing the dog in the way he did. There was a conflict in the testimony as to the manner in which the dog was removed, whether under circumstances that were calculated to provoke the anger of the owner, but, be that as it may, it was wrong to give an instruction which told the jury that the motorman was in the wrong and that he was not justified in removing the dog from the car. This error, we think, calls for reversal of the case.

There are other assignments with respect to the court's refusal to give certain instructions requested by the defendant. But we have said enough about the law of the case to indicate the court's views, which will, of course, be followed in the next trial.

For the error indicated, the judgment is reversed and the cause remanded for a new trial.

### ON REHEARING.

McCULLOCH, C. J. Learned counsel for plaintiff insist that we are wrong in condemning instruction No. 5 as reversible error, and they cite authorities holding that violation by the passenger of a carrier's rules justifies

ejection. A fair illustration of the authorities cited is the case of *Gregory* v. *Railroad Co.,* 100 Ia. 345, 69 N. W. 532, where it was held that if a "passenger refuses to remove his dog from a passenger car in compliance with the regulations of a railroad company the conductor is authorized to remove both."

If that doctrine be applied literally to the facts of this case, then the error of the trial court will be equally apparent, for the evidence is undisputed that the plaintiff knowingly violated the rules, and if that, under the law, completely justified his ejection, the court erred in submitting any issue to the jury except the single question whether or not excessive force was used by the motorman in ejecting plaintiff. But we have, in the opinion, correctly, we think, stated the law more favorably to the passenger. We said, in substance, that since the passenger had paid his fare, he had the right to continue his journey on the car, notwithstanding the violation of the rule and consequent removal of the dog, and that the motorman had no right to eject him unless he did something more than merely protest against the removal of the dog.

However, there is no real conflict between the doctrine of the authorities cited by counsel for plaintiff and the conclusions we stated in the opinion, as applied to the facts of this case. The plaintiff was standing inside the car near the door looking out at the dog, when the motorman removed the dog. If the motorman's statement of the facts is true, he did no wrong in removing the dog in the manner stated, but he was not bound to eject plaintiff and had no right to do so unless the latter interfered and contumaciously refused to permit the removal of the dog, or was guilty of some other misconduct sufficient to justify his ejection. If, however, the motorman had removed the dog in the absence of plaintiff and without notice to him, so as to cause the loss of the dog to plaintiff, then there would have arisen the question whether or not plaintiff had a right of action

against the company for the loss of his dog, but no such question is presented under the facts of this case.

We are still of the opinion that instruction No. 5 was erroneous and prejudicial and calls for reversal of the judgment.