ST. LOUIS SOUTHWESTERN RAILWAY COMPANY v. GRAHAM.

Opinion delivered May 13, 1907.

1. LORD CAMPBELL'S ACT—RIGHT OF FOREIGN ADMINISTRATOR TO SUE.— A foreign administrator may maintain an action to recover damages for the death of his intestate caused by the wrongful act, neglect or default of another, under Kirby's Digest, § § 6289, 6290. (Page 67.)

2. RAILROAD—INJURY BY TRAIN—PRESUMPTION.—Proof that an employee of a railroad company, while riding upon a handcar, was struck by a train and killed makes a *prima facie* case of negligence against the railroad company, and casts upon it the burden of proving that a constant lookout was kept by its employees.  (Page 68.)

3. SAME REQUIREMENT OF LOOKOUT.—The statutory requirement that railroads shall keep a constant lookout for persons and property upon their tracks (Kirby's Digest, § 6607) applies to railroad yards as well as other places, and is for the benefit of employees as well as others.  (Page 68.)

4. SAME—SUFFICIENCY OF LOOKOUT.—Evidence that a brakeman for the purpose of keeping a lookout was riding at night on the tender of an engine which was being backed, that he had a lantern which enabled him to see a distance of thirty feet, but that the engine was going at such speed that it could not have been stopped short of fifty-five feet, fails to establish that an efficient lookout was being kept.  (Page 68.)

5. SAME—CONTRIBUTORY NEGLIGENCE—WHEN QUESTION FOR JURY.—Where intestate, riding on a velocipede, was run over and killed by an engine coming behind him, it was not error to submit to the jury the question whether he was negligent, upon evidence that, expecting a train in front, he was paying closer attention to that direction, but was not neglecting to watch the other direction also.  (Page 69.)

6. INSTRUCTIONS—CONSTRUCTION AS A WHOLE.—As it is generally impossible to state all the law in one instruction, if the various instructions separately present every phase of it as a harmonious whole, there is no error in each instruction failing to carry qualifications which are explained in others.  (Page 70.)

7. SAME—GENERAL AND SPECIAL OBJECTION.—It was not reversible error to give an instruction which was in general terms accurate, but which lacked an explanation fitted to the facts to make it applicable to the case in point, if the attention of the trial court was not specifically called to the effect.  (Page 70.)

Appeal from Ouachita Circuit Court; *Charles W. Smith,* Judge; affirmed.

### STATEMENT BY THE COURT.

C. W. Luhrsen was a young man engaged in the civil engineering department of appellant railroad. He was recently graduated from the Agricultural & Mechanical College of Texas in civil engineering, and obtained employment from appellant in its engineering service at $45 per month about six weeks before his death, which occurred on the 9th of October, 1900. He was then

21 years of age, and had graduated the preceding June.  At the time of his death he was in company with J. D. Carter, a classmate of his, who had likewise obtained employment in the engineering corps under E. J. Nichols, assistant engineer in charge of the maintenance of way for the Camden Division.  Luhrsen, Nichols and Carter were riding a railroad velocipede, commonly called by witnesses a "speeder."  Nichols left them as they were nearing the city, in order to reach home sooner, as he anticipated that the speeder would be laid out by a freight engine which was switching in the yards, and it became the duty of Luhrsen and Carter to carry the speeder on to the station.

An ordinary freight engine was doing the switching for the local freight, which had shortly before reached Camden.  In doing the switching, the engine with several cars attached to it had passed Luhrsen and Carter on the velocipede, they having got out of its way and got back on the track after the engine passed south.  They started north again, watching for a passenger train from the north which was almost due.  Just before they reached a trestle called the Ravine Trestle, they stopped, or nearly so, to look and listen for this passenger train.  Not hearing or seeing it, they proceeded on their journey north, making about six miles an hour.

A short distance after passing the trestle they were overtaken by the said engine.  It was backing with two cars attached to it, the tender foremost, and on the tender a brakeman was riding with a lantern, keeping a lookout.  Carter saw the engine coming when it was seventy-five or a hundred feet back (south) of them.  He jumped and called to his companion to jump.  Luhrsen in jumping from the speeder became entangled with the wheel, and was run over and instantly killed.  Carter escaped.

There was some evidence tending to prove that the engine was running from twelve to twenty miles an hour.  The trainmen in charge of it say that it was running from six to ten miles an hour.  Probably the consensus of their testimony would indicate a speed of about six miles, or a little more, per hour.  This was in the yards of the company, and there was a rule of the company prohibiting a speed within the yard limits of over six miles an hour.

Carter says that at the point at which Luhrsen was struck the velocipede with the two men upon it could have been seen for a distance of about four hundred feet if the engine had been equipped with an ordinary headlight. Owing to a curve in the track, it would not have been in sight for more than four hundred feet. The accident occurred at 6:10 P. M., and the night was a cold, clear, starlight night. Carter says that an object the size of the speeder with two men upon it could have been seen by a man of ordinary vision at that time 250 feet south of the point where Luhrsen was killed. The brakeman keeping lookout says he was keeping a careful watch, and the men on the speeder were only twenty feet away when he saw them; that he immediately gave the stop signal to the engineer, who brought the engine to a quick stop. That the engineer used every means in his power to bring the train to a quick stop, and that he made as good a stop as could have been made after receiving the signal, is undisputed. There is a conflict in the testimony as to how far the train ran after striking the velocipede before it was brought to a stop, ranging from fifty feet by the brakeman to 107 feet by Carter. There was testimony on behalf of appellant that the bell was continuously ringing while the train was traveling through the yards, while the testimony of Carter is that he failed to hear any bell ringing on the engine.

The track was slightly up grade at the point of the accident, and the testimony on behalf of appellant is that the engine in question, running six to eight miles an hour, with the two cars attached, could have been stopped in about fifty-five or sixty feet. If the speed was greater, the distance would, of course, have been further.

Young Luhrsen was the only son of a family of five. By a family agreement, two of his sisters dropped their education to let him be advanced, and his father devoted his limited means to educate him, with the understanding that as soon as he could begin earning money he was to help educate his sisters. His father spent $2,700 on his education, and the young man promised his father and his sisters that as soon as he could earn the money he would repay the same to his father for the education of his sisters. It was also shown

that other contributions were made to him by his father, which were expected to be repaid in the same way. He was shown to be in fine physical condition, and a man of exemplary habits and fine character, with an opportunity for advancement in his calling. The wages of men in the engineering corps of the appellant road ranged from $40 to $150 a month. He took the position with the railroad company with the expectation and intention that he could then begin repaying his father for the money advanced for his education. He had not drawn any money at the time he was killed.

This suit was an action by his father as administrator appointed by the county court of De Witt County, Texas. Afterwards, W. H. Graham, the appellee, was substituted for the father as administrator. There was a recovery for the plaintiff for $2,150, and defendant has appealed.

*S. H. West* and *Gaughan & Sifford*, for appellant.

1. A foreign administrator is without authority to sue in this State for the benefit of the next of kin, in a personal injury case. 54 Ark. 64. This point does not appear to have been presented by the defendant in 76 Ark. 377, but only the fact that the administratrix had remarried, and that *ipso facto* her letters were revoked. See Kirby's Digest, § § 6289, 6290, 7808; *id.* § § 2, 14. The principle of comity does not apply in this case. 9 S. W. 540; 22 S. W. 1062; 26 S. W. 455.

2. Under the facts in proof defendant is not liable, neither was it guilty of any negligence causing the accident. As to the speed of the train, the preponderance of the evidence discloses that it was not going over 7 miles per hour; but if it were going at the rate of 12 or 15 miles per hour, that would not have been negligence. 63 Ark. 182. It is not contradicted that the bell was continuously ringing, and it is not claimed that the trainmen were guilty of any negligence after discovering deceased on the track.

3. Deceased was guilty of contributory negligence. It is the duty of one who is on a railroad track to listen and to look for trains approaching from either direction, and to continue to do so, using his sense of sight and hearing until the danger is past. Where the facts are undisputed, the question whether or

not deceased was guilty of contributory negligence is one of law for the court. 76 Ark. 13; 77 Ark. 398; 61 Ark. 550; 62 Ark. 235; *id.* 245; 64 Ark. 364; 69 Ark. 380. In this case, because of the noise made by the velocipede, it was more incumbent than usual on deceased to exercise the sense of sight. 61 Ark. 558.

4. The sixth instruction errs as to the measure of damages, resulting in an excessive verdict. The son would necessarily have repaid his father, had he lived, in small annual instalments. To give the father a present sum equal to the total amount he would ultimately have received more than compensates him. 60 Ark. 558; 57 Ark. 384.

*Smead & Powell* and *Scott & Head,* for appellee.

1. A foreign administrator may sue in this State for the benefit of the next of kin in cases of personal injury. Kirby's Digest, § 6003; 62 Fed. 437; 40 N. E. 527; 41 Ind. 48; 103 U. S. 11; 76 Ark. 377. See also 36 Conn. 213; 105 Ill. 364; 41 Ind. 48; 16 Kan. 568.

2. Instructions given are to be construed as whole. It is not necessary that one instruction should embody all the theories possible in the case. The second and seventh instructions, to which appellant objects, if deficient when standing alone, were supplied by other instructions given at its request. 77 Ark. 458; 75 Ark. 325; 67 Ark. 531; 76 Ark. 227.

3. There was no contributory negligence on the part of deceased. The passenger train was entitled to the right-of-way, was due, and it was deceased's privilege as well as duty to give more attention to that end of the road whence he most expected danger. Moreover, he had the right to rely, to some extent at least, upon the employees in charge of this train not exceeding the speed limit for such trains established by the master. The question of contributory negligence was for the jury. 67 Ark. 377; 13 S. W. 817; 36 N. E. 1036; 45 N. W. 739; 47 N. W. 68; 78 Ark. 251; *Id.* 355; 79 Ark. 137; 79 Ark. 241; 74 Ark. 372; 76 Ark. 227.

4. The proof was ample that appellant was negligent in not keeping a lookout, in failing to have a headlight on the

engine and in exceeding the speed limit. The lookout statute accrues to the benefit of employees of the railroad as well as to others, and, an injury or killing by a train being shown, a *prima facie* case of negligence is made out. Kirby's Digest, § § 6607, 6773; 99 S. W. 81; *id.* 71; 65 Ark. 235; 92 S. W. 1120; 98 S. W. 363; 76 Ark. 166; 74 Ark. 374.

5. The sixth instruction, on the measure of damages, was substantially the law. Appellant ought to have pointed out specifically its objections to it in the trial court, when its deficiency might have been remedied. 51 Ark. 509; 55 Ark. 462; 75 Ark 76; 99 S. W. 73; 69 Ark. 632; 56 Ark. 594; Thompson on Charging the Jury, § 82; 65 Ark. 54; 73 Ark. 594; 62 Ark. 543; 76 Ark. 377. The evidence warranted a larger verdict, and should stand. 81 Ark. 61.

Hill, C, J., (after stating the facts.)

1. The first question presented is as to the right of a foreign administrator to maintain such an action in this State. This is an action founded upon Lord Campbell's Act, sections 6289 and 6290 of Kirby's Digest. The argument is made that a foreign administrator can recover in this State only for sums which would be assets for the payment of debts, and *Fairchild* v. *Hagel,* 54 Ark. 61, is relied upon. But that decision can not be taken to mean anything beyond the law as applied to the facts therein. It was dealing with a foreign administrator seeking to recover lands in this State, and what was said of that action was well said; but the decision does not apply to a state of facts where recovery is sought in a personal action by a foreign administrator for the benefit of the next of kin. The administrator in the Hagel case could not recover because an Arkansas administrator bringing a similar suit could not have recovered. The statute gave the foreign administrator no greater power than the home administrator, but did give him the same power to maintain suit. This question was fully considered by the Supreme Court of the United States in the case of *Dennick* v. *Railroad,* 103 U. S. 11. While there is some difference in the adjudications on this subject, the reasoning of Mr. Justice Miller, speaking for the court in that case, presents the better position. It was likewise held in the *St. Louis, I. M. & S. Ry. Co.* v. *Cleere,* 76 Ark. 377, that a foreign admin-

istrator could sue and recover under Lord Campbell's Act for injury in this State. It is true that that point was not pressed in argument, nor specifically considered by the court, but it was necessarily involved in the question which was considered: that is, whether the marriage of a foreign administratrix terminated her right as administratrix to maintain suit in the State.

2. It is insisted that there was no evidence of negligence of the appellant, and that the court erred in submitting that question to the jury. The evidence that Luhrsen was killed by the running of a train gave rise to a presumption of negligence against the railroad company, casting upon it the burden to establish that constant lookout was kept; and the court so instructed the jury in the 7th instruction. This question was recently fully examined by this court in a case similar to this one, *St. Louis, I. M. & S. Ry. Co.* v. *Standifer,* 81 Ark. 276.

This lookout must be kept in the yards of the company as well as on other parts of the track, and is for the benefit of employees of the company as well as others. *Little Rock & Hot Springs W. Rd. Co.* v. *McQueeney,* 78 Ark. 22; *Kansas City S. Ry. Co.* v. *Morris,* 80 Ark. 528.

The evidence on behalf of appellant is not sufficient for the court to say as a matter of law that this presumption is overcome, even if there were no evidence on behalf of appellee tending to establish negligence. The testimony of appellant is that there was a brakeman posted on the tender with a lantern, which cast its rays not exceeding thirty feet, and that, owing to such light, he could not have seen beyond that distance, and that the train running at the speed at which it was running could not have been stopped short of fifty-five or sixty feet. This evidence on behalf of appellant alone presented a question of fact to the jury as to whether an efficient lookout was being kept. If the operatives of the train circumscribe the vision of the lookout watchman by a lantern, and do not run its trains so slowly that it could stop within the vision of the watchman, then a question of fact is presented as to whether or not the lookout statute has been violated.

The evidence of appellee likewise presented a question for the consideration of the jury, as to whether the appellant was guilty of negligence. Mr. Carter testified that he and his com-

panion could have been seen in their velocipede for 250 feet before they were struck, by a man of ordinary vision, without any light, and if there was an ordinary headlight they could have seen 400 feet. The court sent this question to the jury under proper instruction—number 2—which is set out in the margin.*

3. The question of the contributory negligence of Luhrsen is more difficult than the question of the negligence of the railroad company. According to the testimony most favorable to Luhrsen, the train was seen by his companion when it was only seventy-five or a hundred feet distant, whereas it could have been seen for a distance of 250 or 400 feet. If the train was running at the high rate of speed that some of the testimony indicates, the time consumed in running from the point where it could have been seen to the point where it was seen would have been but a very few seconds. And the failure to constantly watch would have been limited to an exceedingly short period of time. If the train was running only six or eight miles an hour, as the trainmen's testimony indicates, it was running but little faster than the velocipede; and six miles was the company's limit for running in the yards. Therefore, it is reasonable that Luhrsen and Carter were not expecting danger from being overtaken by this switch engine in the yards, and they were expecting a passenger train soon from the north and their attention was most sharply directed to it. While this court has said many times, and can not repeat it too often, that it is the absolute duty of a person on a railroad track to keep a constant lookout both ways, yet it is physically impossible to be looking both ways at the same instant, and a man can reasonably be permitted to pay closer attention to the point from which danger is expected than to the other; however, never to the extent of relaxing attention from the other direction fur-

"*2. The law contemplates an efficient and watchful lookout, and not one which is merely perfunctory. A lookout who does not see what with due care could have been seen would not be in the proper discharge of his duty, and not the constant lookout contemplated by law. If, therefore, the jury believe that at the time of the alleged killing, the defendant was not keeping such lookout, or was maintaining a lookout who did not see the deceased when and as soon as with due care he should have been seen by such lookout, and thereby the deceased was killed by the train, the engine or tender of the defendant when in motion, then was the defendant guilty of negligence."

ther than necessary to give the required attention to the direction of most imminent danger. This subject was fully considered in *St. Louis, I. M. & S. Ry. Co.* v. *Tomlinson,* 78 Ark. 251, and again in *Chicago, Oklahoma & Gulf Ry. Co.* v. *Baskins,* 78 Ark. 355. Other applications of it are found in *St. Louis, I. M. & S. Ry. Co.* v. *Dillard,* 78 Ark. 520; *Scott* v. *St. Louis, I. M. & S. Ry. Co.,* 79 Ark. 137; *St. Louis & S. F. Rd. Co.* v. *Wyatt,* 79 Ark. 241.

It was proper for the question of contributory negligence to be submitted to the jury, and it was properly submitted.

4. Criticisms are made of some of the instructions, in that they seem to permit a recovery if the jury find the defendant guilty of negligence, without the qualification "and unless they find the deceased not guilty of contributory negligence." Taking these instructions as a whole, the court think they make it clear to the jury that contributory negligence on the part of deceased would defeat a recovery, even should they find the defendant guilty of negligence. It is generally impossible to state all the law of the case in one instruction; and if the various instructions separately present every phase of it as a harmonious whole, there is no error in each instruction failing to carry qualifications which are explained in others. *Brinkley Car Works* v. *Cooper,* 75 Ark. 325; *St. Louis, I. M. & S. Ry. Co.* v. *Hitt,* 76 Ark. 224; *Southern Cotton Oil Co.* v. *Spotts,* 77 Ark. 458.

5. Exception is taken to the sixth instruction on the measure of damages. The instruction is as follows: "6. If, under the evidence and instructions in this case, the jury find for the plaintiff under the first count in the complaint, they will return a verdict in favor of the plaintiff for the benefit of the father of the deceased for such sum of money as they believe the defendant would, under the testimony, have given or paid said father or laid out and expended for his benefit, had the deceased not been killed." The objection is that the evidence shows that the son expected to repay his father for the sums expended on his education from his earnings, and necessarily such payments would be in instalments and likely run over several years; and this instruction contemplates the entire sum which would be repaid, without taking into consideration the present value of the deferred instalments. The instruction in general terms

is correct, but in view of the evidence, which would indicate that the payments would run over quite a period in the future, it should have been explained that the present value of such deferred payments, and not the entire sum of the payments, should be found. Had appellant called the attention of the lower court to the evidence in this regard and asked such explanation of the instruction, it doubtless would have been given. The court does not think that it is a reversible error to have given an instruction which is in general terms accurate but which lacked an explanation fitted to the facts to make it entirely accurate in this instance, if an explanation was not requested in the lower court, and the attention of the trial court not called to the evidence requiring the explanation. Of course, it would have been different if the instruction was in itself erroneous. But it is not abstractly wrong. There is no indication that the jury was misled by it, because the verdict is less than the evidence would have justified the jury in giving.

Judgment affirmed.