St. Louis, Iron Mountain & Southern Railway Company *v.* Blaylock.

## Opinion delivered March 29, 1915.

1. ATTORNEY AND CLIENT—FEES—PARTY TO SUIT.—While an attorney has a lien upon the proceeds of his client's claim against a defendant, under the statutes, whether the action is reduced to judgment or settled by compromise, he can not properly be made a party to the litigation.

2. ATTORNEY'S FEES—LIEN.—Under the statutes an attorney has a lien for his fee, which can not be defeated by any settlement of the parties litigant, before or after final judgment or final order.

3. ATTORNEY AND CLIENT—FEES—RIGHTS INTER SE.—An attorney has no right to compel his client to continue litigation; a client may dismiss his cause of action or may settle with the opposite party without consulting his attorney, but when there are any proceeds from the litigation derived by settlement, compromise or final judgment, the attorney has a lien thereon, of which he can not be deprived by the parties to the lawsuit, by any settlement they may make.

4. ATTORNEY AND CLIENT—FEES.—Appellee, through certain attorneys, brought suit against appellant in S. County, and thereafter brought suit against appellant on the same cause of action, through other attorneys, in L. County. Appellant moved in the L. County action to have the first attorneys made parties, in view of their interest in their fees in the outcome of the litigation. *Held*, the motion would be overruled, as that was a matter collateral to the only issue in L. County, namely, the liability of the appellant to the appellee on the cause of action, and that under the facts appellant's only concern was to see that the proceeds of a judgment in appellee's favor were not paid over until it should be determined whether or not the attorneys first employed had a lien upon such judgment.

5. EVIDENCE—RULES OF CORPORATION—PRACTICE—REBUTTAL.—In a personal injury action, when defendant has introduced evidence showing a certain rule to exist, and plaintiff's duty with reference thereto, it is competent for plaintiff to introduce testimony in re-

buttal, showing a different interpretation of the rule to be understood by plaintiff and other employees of defendant company.

6. EVIDENCE—INTERPRETATION OF RULES.—The above evidence held competent as showing the construction placed upon the rule by the workmen in defendant's employ, and as actually followed, by them.

7. NEGLIGENCE—STATUTORY PRESUMPTION—OPERATION OF TRAINS.—The statutory presumption of negligence applies in all cases where employees of railway companies receive injuries by the running of trains, except as to those employees who are themselves engaged in the actual running of the train which causes the injury. (Kirby's Digest, § 6773.)

8. NEGLIGENCE—STATUTORY PRESUMPTION—OPERATION OF TRAIN.—Kirby's Digest, § 6773, provides that when an employee of a railway company is injured by the operation of a train, when he is not actually engaged in the operation thereof, a presumption of negligence on the part of the train crew arises, placing on the railway company the burden of proving that it was not guilty of negligence.

9. APPEAL AND ERROR—INSTRUCTIONS—COMPLETENESS.—Where the instructions given in a cause, separately present every phase of the law as a harmonious whole, there is no error in each instruction failing to carry qualifications which are explained in others.

10. MASTER AND SERVANT—INJURY TO SERVANT—VIOLATION OF RULE—KNOWLEDGE.—When a servant is injured by reason of his violation of a rule of the master which he knew or ought to have known, the servant may be held guilty of contributory negligence in not observing the rule, but when a plea of contributory negligence is predicated solely upon plaintiff's failure to observe a rule, he must be shown to have knowledge of the rule before he can be held culpable on the ground of his not having obeyed it.

11. MASTER AND SERVANT—RULES—ABROGATION BY CONDUCT.—Where a rule which is made for the protection of the employees of appellant is habitually violated by the employees for a long time, with the knowledge and acquiescence of those servants of appellant whose duty it is to enforce the rule or report any infractions thereof, so as to establish the custom of violating the rule, and thus bring home to the appellant knowledge thereof, an abrogation of the rule is effected, regardless of whether the servants charged with its enforcement affirmatively or expressly consented or acquiesced or not.

12. APPEAL AND ERROR—INVITED ERROR—INSTRUCTIONS—INCONSISTENT POSITIONS.—Where appellant has asked the court to declare the law in a certain way, he can not thereafter object to a ruling of the court in accordance with said prayer, without some affirmative showing in the record that it had abandoned and withdrawn its objection to the court's ruling, rejecting the prayer when first offered.

13. Appeal and error—invited error—ruling of trial court.—A party will be held to have waived the error in the court's ruling which he invited the court to make.

14. Master and servant—injury to servant—violation of rule—contributory negligence.—Where appellant's servant was injured while acting in the course of his employment, and the evidence was con flicting as to whether he violated a rule of the appellant while performing his work, the question of contributory negligence is for the jury.

15. Master and servant—injury to servant—ambiguous rule—construction.—An ambiguous rule promulgated by a corporation for the government of its employees in a dangerous service should generally be taken in its stronger sense against the corporation and in favor of the employee.

Appeal from Lonoke Circuit Court; *Eugene Lankford,* Judge; affirmed.

### STATEMENT BY THE COURT.

Plaintiff was employed by the defendant as a laborer and commenced work on the rip track in November, 1911. The rip track is the place where they put bad order cars for repairs; there are a number of these tracks at the Argenta yards, all in a body. Plaintiff was what is known as a "steel car helper," and on the morning of September 3, 1913, while in the performance of his duties, he received personal injuries for which he brought this suit in the Lonoke Circuit Court on July 9, 1914, alleging that defendant's switchmen, "without notice to plaintiff, negligently shoved cars upon the track where he was engaged at work, striking the car that was being repaired and running it over him; that he was injured by reason of the negligence of his foreman in failing to notify the switchmen that repairs were being made upon the car where the injuries occurred." He further alleged that he was exercising due care for his own safety, and that at the time was doing repair work upon one of the cars under the direction of his foreman, one Vance, who was present. He described his injuries and alleged damages in the sum of $50,000, for which he prayed judgment.

The defendant moved to dismiss the cause, setting up that plaintiff, through his attorneys, Jackson and Jones, on the 16th day of September, 1913, instituted suit against

defendant in the Saline Circuit Court to recover for the same injuries, and that said suit was still pending in that court; that at the March term of that court, the cause was continued by agreement between Jackson and Jones, attorneys for the plaintiff, and the attorneys for the defendant; that the cause under the agreement for continuance stands for trial at the next September term of the Saline Circuit Court; that plaintiff employed Jackson and Jones under a contract which provided that they should have a contingent fee out of the proceeds of the amount recovered; that Jackson and Jones have a vested interest in plaintiff's cause of action, and asking that Jackson and Jones be made parties, or that the cause be dismissed. The defendant, as an exhibit to its motion, filed a copy of the complaint filed by Jackson and Jones in the Saline Circuit Court, and also a copy of defendant's answer to said complaint.

The plaintiff responded to the motion denying its allegations; he denied that he employed Jackson and Jones, or either of them, to represent him, or that they had any right to file suit in the Saline Circuit Court, and denying that they had any interest in his cause of action. He exhibited with his response copy of the order of the Saline Circuit Court dismissing the case of plaintiff against the defendant; he also exhibited a copy of an affidavit made by him in which he denied that he had entered into a contract authorizing Jackson, of the firm of Jackson and Jones, to represent him in his claim for damages against the defendant, and setting up that he had nothing to do with the case filed in the Saline Circuit Court except to cause the same to be dismissed on June 25, 1914.

The defendant amended its motion to dismiss, setting up that the dismissal of the action in the Saline Circuit Court was without the knowledge or consent of Jackson and Jones, the attorneys representing the plaintiff in that court, and was unauthorized; and that Jackson and Jones did not dismiss their cause of action arising out of their right to a lien on plaintiff's cause of action. In support of its motion to dismiss, defendant adduced the affidavit

of Jackson and Jones in which they stated that they were
employed by the plaintiff on the 16th day of September,
1913, to prosecute his claim against the defendant for
damages suffered by him on the 3d day of September,
1913; that they had an agreement with plaintiff that they
should receive for their fee one-half of any sum recovered
in any suit brought by them for the plaintiff, and that if
no suit was brought and the claim was compromised, their
fee should be equal to one-third of the amount recovered
by compromise; that the contract entered into between
affiants and the plaintiff contained a power of attorney
authorizing affiants to bring suit on plaintiff's claim
against the defendant in a court having jurisdiction of
the matter; that in pursuance of this contract, affiants
on the 16th day of September, 1913, instituted action for
plaintiff in the Saline Circuit Court, where the action is
still pending; that affiants had not been paid anything
for their services rendered under the contract with plain-
tiff; that at the March term, 1914, affiants and the attor-
ney for the defendant agreed that the cause should be con-
tinued until the September term, 1914, which was done,
and that the cause stands for trial at that term, and affi-
ants intended to prosecute the cause; that they had not
authorized or participated in the bringing or prosecution
of the suit in the Lonoke Circuit Court. On August 10,
1914, the court overruled the defendant's motion to dis-
miss, and its motion to have W. D. Jackson and Gus W.
Jones made parties plaintiff.

The defendant then filed its answer denying the alle-
gations of the complaint as to its negligence and as to the
injuries of the plaintiff, and setting up the affirmative de-
fenses of contributory negligence and assumed risk on
the part of the plaintiff. On August 13, 1914, defendant
renewed its motion to dismiss the cause, alleging that
since the court passed upon the former motion, the plain-
tiff, through his attorneys Jackson and Jones, had rein-
stated the suit in the Saline Circuit Court, and it exhib-
ited a certified copy of the complaint that was filed in the
Saline Circuit Court, and renewing its allegations to the

effect that Jackson and Jones had a vested interest in the plaintiff's cause of action, and praying that the cause be dismissed; and that it be transferred to the Saline Circuit Court in order that defendant might have it consolidated with the suit pending there, or that the cause be continued in order to give the defendant an opportunity to have the Saline Circuit Court, at its September term, determine whether Jackson and Jones and the plaintiff had the right to maintain plaintiff's suit in that court.

The court overruled the renewed motion of the defendant to dismiss, to which ruling exception was duly saved.

At the time the plaintiff received his injury, he had been working for defendant nearly two years. Up to that time, he had never worked away from the rip tracks; when they were working on a rip track, the switches were locked; plaintiff had nothing to do with protecting himself on the rip track; he never had a blue flag and never used one as long as he stayed there. Plaintiff and another helper worked under one Vance as their foreman; they did such work as they were ordered to do by the foreman, and under his supervision, the three constituting what was known as a "steel car gang." The plaintiff describes what took place on the day of his injury, as follows: "Mr. Vance told me to get my hammer and my wrench and come to this car and tighten up some draft bolts; we went alongside by these engines and found a bolt and came back together, and he told me to put this bolt in. I started under the car to put the bolt in, and Mr. Vance walked across the track, and I just got my hand on this brake to do the work, and those cars came back and hit the one I was under, and it ran over me. When Mr. Vance took me out there that day and told me to go under that car and go to work, I supposed they had been protected. I looked to my foreman for my protection; I did not have any connection with the switch crew." The testimony of the plaintiff tended further to show that one Bosshardt, who was a general foreman of the yards, directed Vance to repair certain cars that were not placed on the rip

tracks where plaintiff had been working before, and where he had been protected by locked switches.

The defendant introduced witnesses whose testimony was to the effect that sometimes repairs were made on other tracks than the rip tracks, and the workmen were protected under the following rule:

"A blue flag by day and a blue light by night displayed at one or both ends of an engine, car or train indicates that workmen are under or about; when thus protected, it must not be coupled to or moved; workmen will display the blue signals and the same workmen are alone authorized to move them, others must not be placed on the same track so as to intercept the view of the blue signals without first notifying the workmen."

This rule was "generally and regularly observed." "Under that rule as enforced and in effect, it was Blaylock's duty upon going to work upon a car upon the storage tracks in the yards to display the blue flag."

One of the witnesses testified: "For the last two years they have not used them (the flags) on the heavy repair tracks, they are locked," it is customary to do such repairs as the plaintiff was doing, out in the yards on other tracks besides the rip tracks; in such cases, the blue flag rule is observed: "When we go outside to make minor repairs, I think the men going out should carry a flag; that rule of putting out blue flags is generally known in the yards; it is observed among the repairers." The plaintiff in rebuttal introduced witness J. R. Countryman, who, over defendant's objection, testified: "I am acquainted with the custom and practice with reference to putting out flags where men are at work on the cars. Under the blue flag rule, where a steel car man takes his two helpers and goes out in the yards to perform work under a car, it is the foreman's duty to put out a blue flag. I have had about twenty-four years' experience as a railroad man." Also, witness Erickson, who testified to the same effect, except that he had worked for the defendant about three years and left its employ, he thought, in 1912. At the conclusion of the testimony of each of these wit-

nesses, the defendant moved to exclude the same ''because the rule is in writing and can not be proved by parol testimony, and for the further reason that the only way it could be competent would be in the way of proving the general custom in abrogation of the rule, and plaintiff's testimony is not sufficient for that purpose, as it does not show any general custom.'' The court overruled the motion to exclude, and defendant duly saved exceptions.

The defendant duly objected and excepted to certain rulings of the court pertaining to the giving, refusing and modifying prayers for instructions, which we will notice in the opinion.

From a judgment in favor of the plaintiff for $15,000, this appeal has been duly prosecuted. Other facts stated in the opinion.

*E. B. Kinsworthy, Thos. B. Pryor, R. E. Wiley* and *T. D. Crawford,* for appellant.

1. The court erred in overruling appellant's motions to dismiss this case, and to make Jackson and Jones attorneys for appellee in the case pending in Saline County, parties to this action. Kirby's Dig., § § 4458, 4462; Act No. 293, Acts 1909; Kirby's Dig., § 6093, subdiv. 3; 26 Ark. 17.

2. It was improper to permit witnesses to testify as to what the blue flag meant. The rule is in writing, is unambiguous, and its construction was for the court as a matter of law. 57 Ark. 410. In any view the testimony was incompetent, since it was an attempt to prove a writing by parol, or to contradict the language of the rule by parol.

3. Instructions 1 and 2 should not have been given. The first makes the fact that plaintiff was injured presumptive of negligence, and ignores the defense of assumed risk which was pleaded by defendant, and the first of these defects is carried into the second instruction. 87 Ark. 321; 100 Ark. 467.

The statutory presumption of negligence, Kirby's Dig., § 6773, relates merely to alleged negligence in the operation of trains and does not apply where the injury

was caused by the negligence of a fellow-servant having no connection with the running of a train.

4. Instruction 9 errs in making the duty of the employee to obey the rule depend upon his actual knowledge of it, and is in conflict with instruction "B," given at appellant's request, which correctly states the law. 99 Ark. 279.

5. The modification of instruction 14 requested by appellant was erroneous in that it tells the jury that, even though there was a rule which required the plaintiff to put out a blue flag to protect himself, he would be excused in law for violating the rule unless the violation of it was negligent. 110 Mo. 387; 86 Ga. 15; 66 Me. 420; 31 Mich. 429; 85 Ark. 240; 83 Ark. 428; 80 Ga. 427.

*Davis & Pace,* for appellee.

1. The motion to dismiss was properly overruled, and Jackson and Jones were not necessary parties to the proceedings resulting in the judgment, neither did they appear and ask to be made parties. 66 Ark. 190; 171 Ill. 100; 66 Ark. 260; 61 L. R. A. 340

2. There was no error in admitting the testimony with reference to the rule. It was given in rebuttal and was to the effect that under the blue flag rule, as interpreted and practiced, where a steel car repairer took his men and went out into the yards to repair cars, it was the duty of the foreman to protect his men by seeing that the switch was locked, or a blue flag put up.

3. Instructions 1 and 2 are correct. The long-established rule under the statute is that where an injury is cause by the operation of a railway train, a *prima facie* case of negligence is made against the company operating such train. 33 Ark. 816; 64 Ark. 364; 49 Ark. 535; 63 Ark. 636; 68 Ark. 171. This rule applies in favor of employees not engaged in the operation of the train that caused the injury. 100 Ark. 476; 81 Ark. 275; 83 Ark. 61; 88 Ark. 207. Negligence having been established, the doctrine of assumed risk would not apply. *St. Louis, I. M. & S. Ry. Co.* v. *Sharp,* 115 Ark. 308; White on Personal Injuries, §§ 378-380.

4. Instruction 9, given at appellee's request, is a correct declaration of the law of this case. 48 Ark. 348; 88 Ark. 187. And there is no conflict between this instruction and instruction "B," given for appellant, but, in fact, the latter only adds to and makes plain the meaning of the former. 78 Ark. 22. Having raised only a general objection in the lower court to instruction 9, and failed to point out specifically wherein it was misleading, appellant can not urge error here. 103 Ark. 391; 105 Ark. 575; 98 Ark. 227; 97 Ark. 226; 95 Ark. 213.

5. There was no error in the court's modification of instruction 14, which was probably suggested to the court by appellant's requested instruction "A." Even if it were erroneous, appellant can not complain. 95 Ark. 209; 88 Ark. 172; *Id.* 138; 39 *Id.* 476.

6. There was no error in giving instruction 10. It is more nearly open to the objection that it was too favorable to the appellant. 88 Ark. 204.

WOOD, J., (after stating the facts). We will discuss the assignments of error in the order presented in appellant's brief.

I. (1-2.3) The court did not err in overruling appellant's motion to dismiss the cause and in refusing to make the firm of Jackson and Jones parties. Our statutes provide that the compensation of an attorney for his services is governed by agreement express or implied, which is not restrained by law, and that for such compensation, "from the commencement of an action, the attorney * * * has a lien upon his client's cause of action, * * * which attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come." They also provide how the lien shall be perfected and enforced. Act 293, Acts of 1909. Sections 4458 and 4462, Kirby's Digest. These statutes do not make the attorneys either necessary or proper parties to the lawsuit. While they have a lien on their client's cause of action "which attaches to a verdict, judgment, etc., and the proceeds, thereof, into whosesoever hands they may come," this lien does not give

the attorney any interest in the cause of action, itself, or any control over the cause of action. The parties to the litigation must necessarily control the proceeding affecting their respective interests until the lawsuit is ended. The attorney, under the statutes, has a lien for his fee which can not be defeated by any settlement of the parties litigant before or after judgment or final order. The attorney has no right to compel his client to continue litigation. A client may dismiss his cause of action or may settle with the opposite party without consulting his attorney, but where there are any proceeds resulting from the litigation, either through settlement or compromise, or as the final result of the prosecution of the lawsuit to the end, the attorney has a lien on such proceeds of which he can not be deprived by the parties to the lawsuit by any settlement they may make. This is as far as the attorney's rights go. Of course, under section 4457, Kirby's Digest, where the parties compromised, the attorneys for the respective parties had a right of action "against both plaintiff and defendant for a reasonable fee to be fixed by the court or jury trying the case." See *Rachels* v. *Doniphan Lumber Co.*, 98 Ark. 529; *K. C., F. S. & M. Ry. Co.* v. *Joslin,* 74 Ark. 552; *Fordyce* v. *McPhetridge,* 71 Ark 327; *Bush* v. *Prescott & N. W. Ry. Co.,* 83 Ark. 210.

In *Davis* v. *Webber,* 66 Ark. 190, we quoted from Judge Dillon in *Ellwood* v. *Wilson,* 21 Iowa 523, as follows: "The law encourages the amicable adjustment of disputes and the construction of a contract which would operate to prevent the client from settling will not be favored," and from *Lewis* v. *Lewis,* 15 Ohio 715, as follows: "A contract with an attorney to prosecute a suit containing a stipulation that the parties should not have the right to settle or discontinue it without the assent of the attorney, would be so much against public policy that the court would not enforce it." The relation of the attorney to his client, so far as not having an interest in the pending cause of action (giving him the right to be heard on the prosecution thereof) is the same now as it was at the time

the above decision was rendered. Giving the attorney a lien on his client's cause of action, which entitles him to have the compensation for his services paid out of the proceeds of whatever disposition the client makes of his cause of action, whether by settlement or final judgment or order, is quite a different thing from giving the attorney an interest in the cause of action itself, or the right to have any voice in the disposition of such cause of action. Section 2 of Act 293, Acts 1909, *supra,* provides that "the court before which said action was instituted or in which said action may be pending at the time of settlement, compromise or verdict upon the petition of client or attorney shall determine and enforce the lien created by this act."

(4)    Jackson and Jones, attorneys, are not asking to be made parties to the litigation, and if they were, it could not be done. Certainly, if appellant could have them brought into the lawsuit at all under the statute, it would have no right to do so in advance of the verdict or final order or judgment. If Jackson and Jones, under a contract with the appellee before the present suit was begun, instituted suit for him in the Saline Circuit Court on the same cause of action as the present suit, the only concern that the appellant could have under the statute would be to see that the proceeds of the judgment in appellee's favor were not paid over to him until it should be determined whether or not Jackson and Jones had a lien upon such judgment; that is a matter entirely collateral and foreign to this suit between the appellee and appellant, in which the only issue involved is whether or not the appellee should recover damages for the personal injuries which he alleges were caused by the negligence of appellant.

II.    (5)    The court did not err in overruling the motion of appellant to exclude the testimony of witnesses Erickson and Countryman. Witnesses on behalf of appellant had testified that under the blue flag rule when minor repairs were being made on cars in the yards outside of the rip track, the men were required to protect themselves by

a blue flag; that "when a man went out in the open yard where work is to be done under a car, they put out a blue flag;" that the rule as thus interpreted was "generally known among the workmen," and "generally and regularly observed by them," under this rule it was Blaylock's duty to put out the blue flag. The testimony of witnesses Erickson and Countryman was strictly in rebuttal of the above testimony, as it tended to show a different interpretation of the rule—that is, that "where a steel car man takes his two helpers and goes out in the yards" (off of the rip tracks) "to perform work under a car it is the *foreman's* duty to put out a blue flag," and that it was the custom to observe the rule as thus interpreted. Counsel for appellant suggest as one reason why the testimony of witness Erickson was incompetent was the fact that he left the company's service two years before the accident occurred, but this reason was not made a ground in the motion to exclude as set forth in appellant's abstract; and appellant having specified the reasons for exclusion in its motion must be deemed to have waived other reasons not mentioned. See *Timothy J. Foohey Dredging Co.* v. *Mabin,* 118 Ark. 1.

(6) Furthermore, the testimony of witnesses Erickson and Countryman was competent. It did not tend to vary or contradict the rule itself, but only tended to show the construction placed upon the rule and the manner of its enforcement by those who were charged with that duty. The rule required "workmen" to "display" and the same workmen to "remove" the blue signals. When the men were working in "gangs" out in the yards (off the rip tracks), the rule was obeyed, according to the testimony of Erickson and Countryman, when the foreman put out the blue flag.

III. (7-8) The effect of instructions Nos. 1 and 2 granted at appellee's request, were to tell the jury that if appellee was at work in the discharge of his duties under a car, and that while so engaged, defendant's servants ran a car over him and injured him, this would be *prima facie* proof of negligence that would warrant a verdict in

his behalf, provided he was not guilty of contributory negligence, and that such facts being established by the evidence, the burden was then upon the appellant to show that the injury was not caused through negligence on its part. The appellant contends that the instructions were erroneous for the reason that the presumption of negligence under the statute (Kirby's Digest, § 6773), does not apply in this case because the proof is that the injury was not produced through the negligence of those servants of appellant who were running the train. The statutory presumption applies to all employees of railway companies who receive injuries by the running of trains, except those employees who are, themselves, engaged in the actual running of the train which causes the injury. *K. C. So. Ry. Co.* v. *Cook,* 100 Ark. 476. The statute is comprehensive and its purpose is to shift the burden of proof to the railway company to show that the injury was not caused through its negligence in all those cases where it is alleged and proved that the employee (not engaged in the running of the train), received his injuries by reason of the running of such train. Here the appellee alleged that "defendant's switchmen, without notice to plaintiff, negligently shoved cars upon the track where he was engaged at work, striking the car that was being repaired and running it over him," and he proved that his injury was produced by the running of appellant's train—that is, that the switch crew ran the cars against the car under which appellee was working, knocking same over him. These allegations and this proof were sufficient to entitle appellee to invoke the statutory presumption and to place the burden of proof upon appellant to show that the injury was not caused through its negligence. See *St. Louis, I. M. & S. Ry. Co.* v. *Puckett,* 88 Ark. 207; *St. Louis, I. M. & S. Ry. Co.* v. *Graham,* 83 Ark. 61; *St. Louis, I. M. & S. Ry. Co.* v. *Standifer,* 81 Ark. 275.

Appellant also contends that the first instruction ignored the defense of assumed risk, but if it be conceded that appellant, under the evidence, was entitled to this defense, it got the benefit of it in other instructions given

at the instance of the appellee, and also in instructions given at the instance of the appellant. For instance, appellant's prayer No. 16, is as follows:

"16. You are instructed that where a person enters into an employment, he assumes all the risks and hazards ordinarily incident to such employment, and he will be presumed to have contracted with reference to such risks and hazards. He assumes all the risks and hazards he knows to exist, or by the exercise of ordinary care he should know to exist in the performance of the duties he engages himself to perform. So, if you believe from the evidence that the plaintiff was injured by one of the risks ordinarily incident to his employment, then your verdict should be for the defendant."

(9) Where the instructions separately present every phase of the law, "as a harmonious whole," there is no error in each instruction failing to carry qualifications which are explained in others. *St. Louis, I. M. & S. Ry. Co.* v. *Graham, supra,* and cases cited.

IV. The court granted appellee's prayer No. 9, in effect telling the jury that if appellee did not know of the blue flag rule he would not be bound by such a rule, and at the instance of the appellant, the court in prayer B instructed the jury, in effect, that if appellee knew, or by the exercise of ordinary care on his part could have known, of the existence of such a rule, and that he negligently failed to obtain such knowledge, or, having obtained same, violated the rule and was injured on account thereof, he could not recover. The appellee testified that he could read a little, that when the employees went to work they were furnished each day with a time card on which they were expected to keep their own time. In one corner of this card was printed in small type the following: "If your duties require you to go around, under or on cars, protect yourself with blue signals." Appellee testified that he carried this card around ever since he had

worked there (over a year), but he had never read the above print; all he knew the card was for was to put thereon his name and the number of hours he had worked, and to turn it in to the check room when he returned from work. The testimony on the part of the appellant showed that the rule was generally known among the repair men and helpers. Under the above testimony, the court could have very well treated the prayers for instructions submitting to the jury the issues as to whether or not the appellee had knowledge of the blue flag rule or whether he was bound to take notice of such rule, as abstract, and have refused to submit these issues to the jury. But the appellant joined with the appellee in having these issues submitted, and is, therefore, not in an attitude to complain of the ruling of the court in submitting them. The instructions, when considered together, as they must be, were not in conflict, and under the rule above announced in *Railway Company* v. *Graham, supra,* instruction B granted at the instance of appellant was but a qualification or explanation of instruction No. 9 given at the instance of appellee. Moreover, there was no specific objection to instruction No. 9, and as an abstract proposition of law it was correct, whereas, appellant's prayer for instruction B, as an abstract proposition of law, was erroneous. Appellant, therefore, is not prejudiced, and is not in an attitude to complain that the ruling of the court was erroneous in granting conflicting prayers for instructions, even if such were the case.

(10)   The effect of appellant's prayer B was to make it the affirmative duty of the appellee to exercise ordinary care to ascertain the existence of the blue flag rule. Such is not the law. In the recent case of *Fort Smith Lumber Co.* v. *Shackleford,* 115 Ark. 272, we said: "But it is the duty of the master, as we understand the law, to make rules for the protection of the employees and to make those rules known to the employees. There is no affirmative duty devolving upon the employees to ascertain what the master's rules are." To be sure, it is the

duty of the servant to exercise ordinary care for his own protection, and if the servant failed to observe the rule which the master had made and brought to his notice, or published under circumstances of which the servant was bound to take notice as in this case, then the servant might be guilty of negligence in not observing the rule. See *St. Louis, I. M. & S. Ry. Co.* v. *Webster,* 99 Ark. 265, pages 279, 280. Mr. Labatt says: ''Both on principle and authority, it is manifest that insofar as the servant's contributory negligence is predicated merely from his failure to perform the duty prescribed by rule, he must be shown to have had knowledge of it before he can be held culpable on the ground of his not having obeyed it.'' 3 Labatt's Master and Servant, page 2992, section 1132. And numerous authorities cited in note.

V.    This assignment of error has been abandoned.

VI.    (11)    Appellant's prayer for instruction No. 14, as modified and given,\* was not correct as asked.    If the rule for the employees' protection had been habitually violated by the employees for so long a time, with the knowledge and acquiescence of those servants of appellant whose duty it was to enforce the rule or report any

---

\*No. 14 (As Requested).    Even if you believe from the evidence that the rule which required workmen to put out a blue flag to notify that they were at work under a car was frequently or habitually disregarded by the workmen in the Argenta yards, still, if you also believe from the evidence that the defendant did not consent to such disregard of the rule, and did not acquiesce therein, then the plaintiff is not excused in law for the violation of the rule, and if he was hurt while violating it, and on account thereof, your verdict should be for the defendant.

No. 14 (As Modified).    Even if you believe from the evidence that the rule which required workmen to put out a blue flag to notify that they were at work under a car was frequently and habitually disregarded by the workmen in the Argenta yards, still, if you also believe from the evidence that the defendant did not consent to such disregard of the rule and did not acquiesce therein, then the plaintiff is not excused in law for the violation of the rule, and if he was hurt while negligently violating it, and on account thereof, your verdict should be for the defendant.

infractions thereof, as to establish the custom of violating the rule, and to thus bring home to the appellant knowledge thereof, this would constitute an abrogation of the rule, regardless of whether the servants charged with its enforcement affirmatively or expressly consented or acquiesced or not. Their silence after knowledge of an habitual violation of the rule, so as to show a custom to violate it, would be sufficient to constitute an abrogation of the rule. *St. Louis, I. M. & S. Ry. Co.* v. *Sharp,* and cases therein cited.

(12-13) Appellant invited the error of the modification made by adding the word "negligently" to the instruction; for in one of its rejected prayers, appellant had requested the court to tell the jury, in effect, that if the blue flag rule existed and was known to appellee, and appellee "negligently, and in violation of said rule, went under the car and was injured on account thereof, he could not recover." Appellant presented the above prayer and the same was at first refused, and appellant duly objected and excepted to the ruling of the court in refusing the same. Appellant could not thereafter object to a ruling which it had at first invited, without some affirmative showing in the record that it had abandoned and withdrawn its objection to the court's ruling rejecting the prayer when first offered. A party will not be allowed to take inconsistent or double positions nor "play fast and loose," so to speak, with the rulings of the court. In the motion for a new trial, appellant assigns as error the refusal of the court to give its prayer No. 8; it also assigns as error the refusal of the court to give its instruction No. 14 as requested, and in "modifying and giving the same as modified." Thus the appellant, on the face of the record, is in the attitude of saying to the trial court: "You erred because you refused my instruction when I first asked it, and then you afterward erred because you, in effect, granted the request I first made." This comes within the well established principle often announced by this court, that a party will be held to have waived the error in a court's ruling which he invited the

court to make. *Fort Smith Light & Traction Co.* v. *Barnes*, 80 Ark. 169. See, also, *St. Louis & S. F. Ry. Co.* v. *Vaughan*, 88 Ark. 138; *Little Rock & Monroe Ry. Co.* v. *Russell*, 88 Ark. 172; *St. Louis, I. M. & S. Ry. Co.* v. *Thurman*, 110 Ark. 188; *Little Rock Railway & Electric Co.* v. *Bracy*, 111 Ark. 613.

VII.    In instruction No. 10, the court, in effect, told the jury that if appellee was injured because of his failure to observe any of the rules of the company given him for his own safety, he would be guilty of contributory negligence, unless the jury found that in violating said rules, he was acting under directions of a foreman or some other employee of the railway company under whom he was working and who had authority to direct his work, in which case it was a question for the jury to determine whether the appellee was guilty of contributory negligence, considering all of the facts and circumstances causing the injury.

(14)    The appellant contends that it was the duty of the appellee, under the blue flag rule when he went to do the work where he was injured, to put out the blue flag to protect himself, that the rule required this, and that the fact that he was working at the time under the directions of Vance, who, as appellee testified, was foreman of the gang, and whom he was expecting to protect him, made no difference. The effect of the contention is that the court should have instructed the jury, as a matter of law, that appellee was violating a rule of the company made for his protection, and in so doing was guilty of contributory negligence and assumed the risk of the injury which he received. But we are of the opinion that under the evidence it was a question of fact for the jury as to whether appellee was guilty of contributory negligence, and whether he assumed the risk, and that these issues were fully and properly submitted to the jury by the instructions which the court gave. The rule was ambiguous and the testimony shows clearly that those whose duty it was to enforce the same placed different interpretations upon the rule. There was testimony on behalf of the ap-

pellant tending to show that the rule was interpreted by the employees to mean that it was the duty of each workman when engaged in work such as appellee was doing at the time of his injury to put out the blue flag. On the other hand, the testimony on behalf of the appellee tended to show that the rule was interpreted by those whose duty it was to enforce the same to mean that it was the foreman's duty to protect the men under his immediate charge by putting out the flag. The appellee testified to facts which warranted the jury in finding that at the time of his injury he was doing his work under the direction of a foreman. One of his witnesses testified that "in the case of a steel car gang foreman who leaves the track and goes out in the yards to work on cars, it is the duty of the man in charge to protect the track." See *St. Louis, I. M. & S. Ry. Co.* v. *Puckett,* 88 Ark. 204. With the rule thus susceptible of different interpretations, and with different interpretations put upon it by those who were charged with its immediate enforcement, the court correctly submitted the issue, as to whether appellee was guilty of contributory negligence and whether or not he had assumed the risk.

(15)    The language of the rule is that "workmen will display the blue signals and the same workmen remove them." This term "workmen" is indefinite, for it was shown that the foreman—that is, the steel car man who took his two helpers and went out in the yards to perform work—was a workman.

"An ambiguous rule," says Mr. Labatt, "promulgated by a corporation for the government of its employees in a dangerous service should generally be taken in its stronger sense against the corporation and in favor of the employee. * * * Where the consequence of holding a given rule valid will be to disable an employee from recovering damage on the ground that he violated its provisions, the courts very properly apply the principle that rules are to be strictly construed against the master." (3 Labatt, Master and Servant, pages 2968 and 2969.)

VIII.   What we have already said disposes of appellant's contention that the evidence is not sufficient to sustain the verdict.

We find no reversible error, and the judgment is, therefore, affirmed.

Hart and Smith, JJ., dissenting.