MIDLAND VALLEY RAILROAD COMPANY *v.* JOHNSON.

Opinion delivered October 13, 1919.

1. ATTORNEY'S FEES—LIEN ATTACHES WHEN.—The lien for attorney's fees, upon the subject-matter of the litigation, as the proceeds in case of a compromise and settlement, attaches when the suit is brought, and is not affected by a settlement and compromise and a dismissal of the suit.

2. SAME—VALIDITY OF CONTRACT.—The lien for attorney's fees can only exist upon a valid, express or implied, contract between the attorney and client.

3. INFANTS—DISAFFIRMANCE OF CONTRACTS—NECESSITIES.—Contracts for the necessities of life, made by infants during minority, can not be disaffirmed by them after reaching their majority.

4. ATTORNEY'S FEES—CONTRACT WITH INFANT CLIENT—RIGHT OF DISAFFIRMANCE.—A contract for attorney's fees made between an attorney and an infant, when the latter is sufficiently intelligent to understand the nature and extent of the contract, is binding upon the infant, and it can not disaffirm the same after majority.

5. ATTORNEY'S FEES—MINOR—DISAFFIRMANCE—SETTLEMENT AND DISMISSAL.—Since a minor, after reaching his majority can not disaffirm his contract made with an attorney, the fact of settlement of the cause of action and dismissal thereof will not operate as a cancellation of the contract with the attorney for fees, and lien.

6. SAME—INFANT—LIEN—FEES AND EXPENSES.—An attorney has a lien under act 293, Acts 1909, upon the property of a railway company for fees and expenses, where the contract between the attorney and client provided that the attorney should receive fifty per cent. of the amount recovered and one-half of the attorney's expenses.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; affirmed.

*Thos. B. Pryor,* for appellant.

1. Appellee, though a minor when the contract with intervener was made, had the right to disaffirm after coming of age and dismiss the suit, and she did so. Under the law no contract could be entered into with a minor which would be binding after she became of age, and if intervener had a contract it was subject to repudiation and disaffirmance after reaching majority. Here she disaffirmed, and the contract was rescinded, and the basis for a fee and lien was destroyed. 44 Ark. 296; Acts 1909, p. 892.

2. The trial court ignored the rights of the attorney first employed by Elliott. Elliott was first employed and continued to represent her until the settlement was had. Rev. Laws of Oklahoma, § 249. The injury occurred in Oklahoma, and the contract was made there and appellant was advised of his employment and under Oklahoma laws he had a lien for his fees, etc., and both appellant and intervener were advised of Elliott's claim and lien.

2. Only one lien can be allowed, and Elliott's was superior under the law. Rev. Laws of Okla.; § 247.

3. The evidence does not disclose where the *contract* was made with the intervener, and no notice was served of intervener's claim or lien, if any. There was evidence of the value of the services of the intervener. The law of Oklahoma governs, and he had no lien that could be enforced in this State, either for fees or expenses. 96 Ark. 112.

*Allyn Smith,* for intervener, Johnson.

1. An infant could not and did not disaffirm her contract of employment with intervener. The right to disaffirm is a personal privilege to the infant, and defendant railway company can not avail itself of this defense. 51 Ark. 294; 59 *Id.* 1; 31 *Id.* 364; 102 U. S. 148-161; 6 Wis. 645; 8 Kan. 122; 59 Ark. 1; 90 *Id.* 351; 119 S. W. 75; 6 Ark. 109.

2. The next friend of an infant may employ an attorney for an infant and fix his compensation and such attorney may intervene and claim his lien. 149 S. W. 894-6; 142 S. W. 207.

3. An attorney so employed is entitled to recover on a *quantum meruit*. 96 S. W. 512. See also 110 U. S. 42; 27 Wash. 250; 102 N. Y. 560; 77 Ark. 35.

An infant is bound for necessaries, 18 Ark. 53; 15 *Id*. 137; 23 Kan. 343, and the minor can not repudiate or disaffirm.

4. Appellant and Elliott settled plaintiff's part only, and intervener was clearly entitled to his fees, expenses, etc., and the infant could not disaffirm her contract, and the judgment should be affirmed with penalty.

HUMPHREYS, J. This suit was instituted on the 16th day of June, 1916, in the circuit court in the Greenwood District of Sebastian County, by Lizzie Murphy, as next friend for Nevada Murphy, against appellant, Midland Valley Railroad Company, to recover damages received by Nevada Murphy while alighting from a train of appellant at Tulsa, Oklahoma.

Upon the filing of the complaint, a summons was issued and duly served upon appellant. On the 5th day of July following, appellant filed a demurrer to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action; and on the 7th day of July, thereafter, filed an answer denying each and every allegation in the complaint. On January 8, 1917, appellant filed stipulations of agreement between appellant, on the one side, and Nevada Murphy and her lawyer, D. G. Elliott, residing in Oklahoma, on the other, for settlement and dismissal of the suit for damages. In a few days thereafter, towit, January 12, 1917, the attorney of record, Jo Johnson, for Nevada Murphy in the damage suit, filed a petition by way of intervention, alleging a compromise and settlement without his consent or knowledge, and asking for judgment against, and lien on, the property of appellant railroad company for his fees,

as per his contract with plaintiff in said damage suit, under which contract it was alleged said attorney was entitled to one-half of the proceeds of recovery and one-half of said attorney's expenses, amounting, *in toto,* to $110. By agreement of appellant and intervener, the issue on the intervention was transferred for trial to the Fort Smith District of Sebastian County. On December 7, 1918, a response was filed by appellant to the petition to fix attorney's fees, in which it was denied that the settlement mentioned in the stipulations for the dismissal of the case was made without the knowledge or consent of said intervener, or that said intervening attorney had any right to a lien on the proceeds of the settlement for a fee and expenses under and by virtue of any agreement or contract with Nevada Murphy.

The cause was heard by the court upon the pleadings and evidence adduced, from which the court found that the intervener was entitled to recover from appellant $122.70, including interest, and to a lien on appellant's railroad for said sum. A judgment was rendered in accordance with the finding of the court, from which an appeal has been properly prosecuted to this court.

The facts are, in substance, as follows: On the 22d day of May, 1916, Nevada Murphy's ankle was injured while alighting from the train of appellant at Tulsa, Oklahoma. She was seventeen years of age at the time. A few days thereafter, D. G. Elliott, an attorney residing at Tulsa, Oklahoma, wrote to the general attorney of appellant that he had been employed in the case of Nevada Murphy, who had been injured while stepping off of the train at Tulsa. Thereafter, the intervener was employed by W. T. Murphy, father of Nevada Murphy, by and with the consent of her mother, Mrs. Lizzie Murphy, and herself, to institute a suit for damages against appellant in the Greenwood District, Sebastian County, for the injury received by Nevada Murphy at Tulsa, while alighting from appellant's train. The suit was filed on June 16, to which appellant filed demurrer on July 5, and answer on July 7, following. The claim was settled by appel-

lant with Nevada Murphy and her attorney not of record, without the consent of her attorney of record, and with knowledge that the suit was pending and that the intervenor was the attorney of record.

The claim agent, Frank J. Wieman, testified that, four or five days after the injury, after investigating the claim, he attempted to make settlement with Nevada Murphy and D. G. Elliott for $100, and, although Mr. Elliott advised her to settle for $100, she contended for $200; that, after the suit had been brought at Greenwood, he agreed to pay Mr. Elliott on settlement $200, but that the settlement itself was made through the general attorney, O. E. Swan; that, at that time, he asked Mr. Elliott about the suit for damages pending at Greenwood and that he talked with Nevada Murphy about it, who informed him that no one except Mr. Elliott was authorized to represent her; that when he went to Fort Smith he telephoned to intervener that he was negotiating a settlement of the claim through D. G. Elliott of Tulsa, Oklahoma.

O. E. Swan, general attorney for appellant railroad company, testified that on January 4, 1917, he made settlement with Nevada Murphy for the injury she received on May 22, 1916, while alighting from appellant's train at Tulsa, for the sum of $200, took a receipt from her for the money and obtained the stipulation for the dismissal of the suit pending in the Greenwood District of Sebastian County, wherein said Nevada Murphy by her next friend, Lizzie Murphy, was plaintiff, and appellant was defendant; that, at the time of settlement, Nevada Murphy made an affidavit to the effect that she was then eighteen years of age, and that D. G. Elliott of Tulsa, Oklahoma, was at the time employed to represent her in her claim against appellant for said injury, and that he had been employed since the second or third day after she received the injury.

Lizzie Murphy, mother of Nevada Murphy, testified that, acting for her daughter, she employed intervener

to institute the suit for damages against appellant, in the Greenwood District of Sebastian County.

Nevada Murphy testified that intervener was employed to represent her by her mother, Lizzie Murphy, with her consent, and that said intervener was still her attorney.

Intervener, Jo Johnson, testified that the first he heard of the case was by letter from W. T. Murphy, written to him from Cotter, Arkansas, and that the correspondence continued until he was authorized to file the suit; that the contract was in writing, and that he was to receive for his fee fifty per cent. of the amount recovered and one-half of his expenses; that one-half his expenses amount to about $10; that he never consented to a settlement and dismissal of the suit, and knew nothing of it until a few days before he filed a claim for attorney's fees.

Appellant does not seriously contend that Nevada Murphy did not make a contract in the State of Arkansas with the intervener to institute a suit against appellant in the Greenwood District of Sebastian County, to recover damages on account of the injury she received to her ankle at Tulsa, while stepping from appellant's train. If such contention were insisted upon, the evidence is sufficient to sustain the finding of the court that such a contract was made in this State. Learned counsel content themselves with the statement that, ''The only question involved in this suit is the right of the plaintiff, after becoming of full age, to disaffirm her contract, if she had one with the intervener, and to repudiate the contract made by her mother with the intervener to institute suit on behalf of the plaintiff (referring to Nevada Murphy).''

The contention of appellant, as we understand it, is that intervener can not claim a judgment and lien, by virtue of the attorney's lien statute in this State, under the contract made with Nevada Murphy, for the reason that she was a minor when she made the contract, and that her act in settling the damage suit and signing the

stipulation for dismissal thereof constituted a disaffirmance of the contract, after reaching her majority. Unless the act of settling the case and signing the stipulation for the dismissal thereof constituted a disaffirmance of her contract with her attorney, the intervener herein, the intervener was entitled, under act 293, Acts of 1909, to a judgment against, and a lien on, appellant's railroad property and bed, for the contractual fee. *St. L., I. M. & S. R. Co.* v. *Kirtley & Gulley,* 120 Ark. 389; *St. L., I. M. & S. R. Co.* v. *Hays & Ward,* 128 Ark. 471.

(1-3) This court said, in the case of *St. L., I. M. & S. R. Co.* v. *Blaylock,* 117 Ark. 504, that "a client may dismiss his cause of action or may settle with the opposite party without consulting his attorney, but where there are any proceeds resulting from the litigation, either through settlement or compromise, * * * the attorney has a lien on such proceeds of which he can not be deprived by the parties to the lawsuit by any settlement they may make." The lien upon the subject-matter of the litigation, or the proceeds in case of a compromise and settlement, attaches when the suit is brought and is not affected by a settlement and compromise and a dismissal of the suit. Of course, under the terms of the statute, the lien can only exist upon a valid express or implied contract between the attorney and client. If the contract in question became nugatory through a disaffirmance thereof by Nevada Murphy after reaching her majority, it might well be contended that there was no contract upon which to base a judgment and lien for attorney's fees in favor of the intervener. In this State it is well settled that contracts for the necessaries of life, made by infants during minority, can not be disaffirmed by them after reaching their majority.

(4) At the time the contract in question was made Nevada Murphy was seventeen years of age. It is true she had not reached her majority, but she had attained to the age where she was sufficiently intelligent to understand the nature and effect of a contract. We

think a contract made for attorney's fees between an attorney and an infant, who is sufficiently intelligent to understand the nature and extent of the contract, is as binding as one for the necessaries of life. The property rights of a minor, as a rule, can not be protected without the aid and assistance of an attorney. The right to be protected involves litigation in the courts. In recognition of this principle, it was said in the case of *Vance* v. *Calhoun*, 77 Ark. 35, that (quoting syllabus): "Where an infant employed an attorney to bring a suit in his behalf, and afterwards sold him the judgment therein, the infant may subsequently disaffirm such sale and recover the amount collected on the judgment, less the amount owing to the attorney for his services."

As this contract was approved by the minor after she attained to the age of intelligence, it is unnecessary for us to decide whether a contract made by the next friend of a minor with an attorney for an attorney's fee would bind the minor.

(5) It follows from the doctrine thus announced that it was not within the power of Nevada Murphy to disaffirm her contract of employment with the intervener herein. Not being a contract subject to disaffirmance by her after reaching her majority, her settlement and stipulation for dismissal of the suit could not affect the right of intervener to his judgment under his contract against appellant and lien on its railroad property, under the construction placed upon the attorney's lien statute in this State in the case of *St. L., I. M. & S. R. Co.* v. *Blaylock, supra.*

(6) It is also insisted that the court erred in allowing $10 expense money and including it in the lien. It is true the statute only allows a lien for attorney's fees based upon valid contracts of employment, express or implied, but if the expenses contracted for are a part of the fee, they come within the purview of the statute. A contract for fifty per cent of the amount recovered and one-half of an attorney's expenses, as in the instant case,

must be regarded as a contract including expenses as a part of the fee.

No error appearing, the judgment is affirmed.