WISCONSIN & ARKANSAS LUMBER COMPANY v. IRONS.

Opinion delivered March 20, 1916.

1. MASTER AND SERVANT—SAFE PLACE TO WORK—DUTY TO INSPECT.—It is the master's duty to exercise ordinary care to provide his servants with a reasonably safe place in which to work, and to make reasonable inspection to see that the place of work and appliances are safe.

2. MASTER AND SERVANT—INJURY TO SERVANT—ASSUMED RISK.—When plaintiff, an employee of defendant, was injured by a defect in the floor of the sawmill, held, under the evidence that it was not shown that plaintiff assumed the risk.

3. MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE.—In an action for damages for personal injuries received by plaintiff because of defective flooring in a sawmill, the evidence held sufficient to show the defendant employer guilty of negligence, and to warrant a recovery.

4. DAMAGES—PERSONAL INJURIES—AMOUNT.—Where plaintiff, an able-bodied young man, was injured through defendant's negligence, sustaining a hernia, which grew steadily worse, and which prevented him from working steadily, he being fitted to do only manual labor, a judgment for $1,500 damages is not excessive.

5. MASTER AND SERVANT—INJURY TO SERVANT—ASSUMED RISK—DUTY OF SERVANT.—Where an injury to a servant was due to the master's negligence, it is erroneous to charge the jury that the servant assumed the risk, if by the exercise of ordinary care he could have discovered and avoided the danger.

6. MASTER AND SERVANT—INJURY TO SERVANT—INSTRUCTIONS—ASSUMED RISK.—In an action for damages for personal injuries, an instruction on defendant's liability for negligence, is not erroneous because it omitted the issue of assumed risk, unless the appellant made a specific objection to the instruction, at the trial, on that ground.

Appeal from Hot Spring Circuit Court; *W. H. Evans,* Judge; affirmed.

*T. D. Wynne* and *H. T. Harrison,* for appellant.

1. The defect in the floor was open and obvious. A servant assumes the ordinary risks and hazards incident to the service, including all risks known to him and those which are open and obvious. 82 Ark. 16; 90 *Id.* 387; 68 *Id.* 316; 57 *Id.* 505; 172 S. W. 822; 61 *Id.* 53; 103 Ark. 103; 87 N. E. 571; 120 Am. St. 562; 107 Ark. 528; 53 N. E. 137; 65 *Id.* 810; 105 Ark. 434; 174 S. W. 150; 108 Ark. 377; 93 *Id.* 208; 100 *Id.* 465; 95 *Id.* 560; 57 *Id.* 76.

2. Plaintiff was bound to take notice of the hole in the floor. 82 Ark. 16; 161 Ill. App. 422; 211 U. S. 459; 45 L. R. A. (N. S.) 387; 115 C. C. A. 515; 195 Fed. 725; 166 *Id.* 407, 410; 92 C. C. A. 159.

3. The facts disclose no actionable negligence. 55 Ark. 483; 57 *Id.* 506; 80 Pac. 311; 182 Ill. App. 236.

4. The instructions given for plaintiff ignore a material issue in evidence and hence are prejudicial. 105 Ark. 205; 99 *Id.* 385; 93 *Id.* 573; 89 *Id.* 522.

5. It is prejudicial error to submit to the jury issues upon which there is no legal evidence to support the finding. 106 Ark. 186; 101 *Id.* 537, 543.; 63 Ark. 177; 56 *Id.* 387.

6. The verdict was excessive and not supported by the evidence.

*D. D. Glover* and *J. C. Ross,* for appellee.

1. The cases cited by appellant do not apply. The defect was not open and obvious. 87 Ark. 217; 91 Ark. 343; 97 *Id.* 553; 87 *Id.* 321; 93 *Id.* 34; 95 *Id.* 477; 87 *Id.*. 396; 90 *Id.* 223; 95 *Id.* 291; 98 *Id.* 327; 78 *Id.* 374. There was no assumed risk. The master must provide suitable appliances and a safe place to work. 90 Ark. 223; 95 *Id.* 291; 98 *Id.* 327; 78 *Id.* 374; 93 *Id.* 564; 103 *Id.* 506; 105 *Id.* 434; 79 *Id.* 20; 90 *Id.* 555; 97 *Id.* 553; 95 *Id.* 291; 88 *Id.* 548. Whether the risk was obvious or not was for the jury. 95 Ark. 291; 110 *Id.* 463.

2. There was no error in the instructions to the jury. 105 Ark. 205; 99 *Id.* 385; 74 *Id.* 377. As a whole, considered jointly, they correctly declare the law. 77 Ark. 458; 87 *Id.* 396; 88 *Id.* 433; 100 *Id.* 119; 83 *Id.* 61; 88 *Id.* 524; 86 *Id.* 104.

3. The verdict is not excessive. There is no reversible error.

Hart, J. Appellee sued appellant to recover damages for injuries received by him while working for appellant at its sawmill. There was a trial before a jury which resulted in a verdict for appellee and from the judgment rendered, appellant prosecutes this appeal.

Roy Irons, the appellee, in his own behalf testified substantially as follows:

I am twenty-one years old. At the time I was injured my regular work was running the cut-off saw at appellant's mill. On the morning I was injured the foreman directed me to help the man operating the rip-saw. Lumber buggies were used to bring in the lumber to the rip-saw. The buggies were loaded with lumber and pulled in to the mill by mules. Then the man who operated the rip-saw would take hold of the lumber buggy and pull it by hand. I would get by the side of the wheel and push the lumber buggy towards the rip-saw. While I was engaged in pulling the buggy wheel, all of a sudden the opposite wheel went through the tram and threw me right over on top of the wheel. There was a sudden stop when the wheel went through the floor and this threw me against the wheel. The injury ruptured me.

S. V. Grissom for the plaintiff testified: I was running the rip-saw and plaintiff was off-bearing for me on the day he was injured. We were pulling a loaded lumber buggy up to position by the rip-saw, at the time appellee was injured. I was guiding the buggy and pulling it, and appellee was pushing at the wheel. There was a place sluffed off of the floor in the tram and one of the wheels went through the floor when it reached the defective place. When the wheel fell through the floor appellee was jerked over on the wheel. I observed the plank after the buggy was taken out. The plank was rotten and the rotten place was about eight or ten feet from the machine I was operating. Two or three days before that time, I noticed a crack in the floor at the place and notified the foreman that it was dangerous and should be repaired. He promised to do so. The floor was not completely out at the place where the wheel went through it, but sloped off and the plank showed itself to be defective if any one should observe it closely. The crack was something like fourteen inches long. It was also shown that the joists on the floor were about

eighteen inches apart and running east and west. The planks were laid across the joists running north and south and were laid in the same direction, with regard to the place of the injury as the rip-saw.

Will Carmichael, the mill foreman testified as follows: Appellee was my brother-in-law and worked under me. I remember him telling me that he fell on the wheel and ruptured himself, about the time he was injured. He did not stop work. He did not turn in any report that he was hurt but worked on under me for something like a year. I don't remember whether Grissom came to me about the hole in the floor or not. It was my duty to look out for holes in the floor and repair them. Appellee regularly worked at the cut-off saw which was situated near the rip-saw.

(1) It is well settled that it is the master's duty to exercise ordinary care to provide his servant with a reasonably safe place in which to work and to make reasonable inspection to see that the place of work and appliances are safe. This is conceded to be the law by counsel for appellant and it is also conceded by them that there is sufficient testimony to warrant the jury in finding that the floor was defective but they contend that the defective condition of the floor which appellee claims caused his injury was perfectly obvious and that the court should have told the jury as a matter of law that appellee had assumed the risk as one of the ordinary incidents to the employment in which he was engaged at the time of his injury. In short they contended that the defect in the floor which caused the injury to appellee, was plainly to be seen and was one of the obvious risks of the business carried on by the appellant.

On the other hand it is insisted by counsel for the appellee that the court was right in submitting the question to the jury. Many illustrative cases are cited by counsel on both sides to sustain their respective positions.

(2) We do not consider it necessary to review these cases, for the reason that they all contain well settled

principles of law and we do not think the facts of any of the cases cited are sufficiently like the facts in the instant case to make them controlling. The law on the question is well settled and the only difficulty is in the application of it to a given state of facts.

When the testimony adduced by appellee is considered in the light most favorable to him, we do not think it can be said as a matter of law that he assumed the risk. It is true Grissom stated that there was a crack in the floor some fourteen inches long and that he had seen it two or three days before the injury occurred, but he also stated that the defective plank sloped off and that only a crack was shown. He was asked if anybody could see the defect and replied that he did not know whether anybody could see it or not; that it was not entirely through the plank.

It is true the regular job of appellee was at a cut-off saw which was situated near there, but his duties did not cause him to walk over that portion of the tramway, so far as the record discloses. He had hauled several loads over the tramway on the day he was injured and on that day and on other days, had noticed that other portions of the tramway were defective but said that he had not noticed any defect in the tram at the place where he was injured.

We do not think it can be said as a matter of law, under the circumstances, that the defect was an obvious one. The joists on the floor were laid east and west and were about eighteen inches apart. The planks were laid across the joists running north and south. According to Grissom's testimony, while the crack was something like fourteen inches long, it was only a crack and the defective condition of the plank did not show all the way through.

It is a matter of common knowledge that more or less saw dust would fly around and would be lighting on the floor near the rip-saw. Anyone walking along there and seeing the crack might have thought it was caused by the plank shrinking or not being laid close

enough together, instead of being caused by the rotten condition of the plank. At least these matters ' were legitimate inferences which might have been drawn by the jury.

(3) Again it is insisted that the evidence did not warrant the jury in finding that the falling of the wheel through the floor caused appellee to be ruptured, but we believe the facts fully warrant the jury in so finding.

It is true appellee continued to work but it may be fairly inferred from his testimony that he did this because he did not realize the gravity of his injury. Two physicians testified for appellant and stated that they did not believe from the testimony detailed by appellee, that the rupture was caused by him falling on the wheel when it fell through the floor. On the other hand a physician for appellee testified that the rupture could have been caused in that way; and from appellee's statement was likely caused that way.

Immediately after the accident happened appellee complained of pain and exhibited his person to Grissom, who testified that it showed indications of injury. Appellee went to a physician after working hours on the day he was injured and stated that the physician told him he had been ruptured. As above stated the testimony of appellee and his witnesses we think, warrant a verdict in his favor.

It is insisted by counsel for appellant that the verdict is excessive. Appellee recovered a verdict of $1,500.

Two witnesses for appellant testified that hernia can be cured by a simple operation and that there was but little danger in undergoing the operation; that most operations for hernia are successful. On the other hand a physician who had examined appellee testified that he found a complete indirect inguinal hernia. He further testified that there is always an element of uncertainty in operations and that there is some danger attached to an operation for hernia; that appellee was permanently injured and would have to wear a truss for the balance of his life.

(4)  Appellee was an able bodied young man at the time he received his injury and could only earn his living by manual labor. It is true he continued to work around appellant's mill after he was injured but he says that he could only do light work and was not capable of lifting, and finally got so that he could not work steadily. According to his testimony he has grown worse since he was injured, and can not now work steadily. Therefore we do not think the verdict was excessive.

The court instructed the jury in effect, that it was the duty of appellant to exercise ordinary care in providing appellee with a safe place in which to work and that while appellee assumed the risks ordinarily incident to his employment, he did not assume any arising from any negligence of appellant in failing to discharge its duty towards him.

(5)  Counsel for appellant asked that the instruction should be modified by adding thereto: unless the jury should find that appellee knew or by the exercise of ordinary care could have known of said negligence. It was the duty of the counsel for appellant to ask for a correct modification of the instruction. The first part of the modification was correct but the latter part was not the law. In other words appellee would assume the risk of the defective condition in the floor if he knew of the defect, but it was wrong to add "or by the exercise or ordinary care on his part could have known of said negligence." The practical effect of such qualifications would have been to tell the jury that appellee should have examined the floor for defects in it before he went to work. In *Chicago, Rock Island & Pacific Ry.* v. *Smith*, 107 Ark. 512, the court in regard to a precisely similar request said that the court did not err in refusing to modify the instruction. Again in the case of *Mosley* v. *Mohawk Lumber Co.*, 122 Ark. 227, the court gave an instruction containing the modification now under consideration and on appeal we held the instruction to be erroneous, saying that the fact that the servant could by the exercise of ordinary care have dis-

covered the defect and avoided the danger does not constitute an assumption of the risk where it arose by reason of the negligence of the master, even though such servant may have been guilty of contributory negligence, which would bar his recovery.

(6) At the appellee's request the court gave the following instruction: "You are instructed that the duty that devolved upon the defendant to exercise ordinary care to provide the plaintiff a reasonably safe place to work, was an absolute duty, and that the defendant could not delegate that duty to any of its employees so as to escape the responsibility of performing this duty, and if you find from the evidence that the defendant failed to perform this duty of exercising ordinary care to furnish and provide the plaintiff a reasonably safe place to work, and that this failure resulted in the injuries complained of herein, then the plaintiff is entitled to recover, and you will find for the plaintiff."

Counsel for appellant insists that the judgment should be reversed because this instruction ignored appellant's defense of assumption of risk. No specific objection was made to the instruction on the ground that it failed to include the claim of assumed risk. At the request of both appellant and appellee, the court gave other instructions on the question of assumed risk. It is conceded that the instruction deals correctly with the phase of the case therein presented. If appellant desires that this instruction should contain qualifications of the claim of assumed risk, it should have made specific objection in the trial court. *A. L. Clark Lumber Co. v. Johns,* 98 Ark. 211; *St. L., I. M. & S. Ry. Co. v. Carter,* 93 Ark. 589; *Arkansas Midland Rd. Co. v. Rambo,* 90 Ark. 108; *St. L., S. W. Ry. Co. v. Graham,* 83 Ark. 61.

Counsel for appellant to sustain their contention rely on the case of *Helena Hardwood Lumber Co. v. Maynard,* 99 Ark. 379. The court told the jury that the master was negligent in furnishing a defective log loader; and directed it to find for the plaintiff if the

injury was due to the fact that it was defective unless the decedent was guilty of contributory negligence. The court in that case said the instruction as drawn not only excluded the defense of assumed risk but was in conflict with the instruction given on defendant's part relative to assumed risk and on that account was erroneous and prejudicial.

It follows that the judgment will be affirmed.