ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY

COMPANY *v.* STAPLES.

Opinion delivered January 26, 1914.

1. MASTER AND SERVANT—INJURY TO SERVANT—DUTY TO KEEP LOOKOUT.— Plaintiff, an employee of defendant railway company, who had nothing to do with the operation of its trains, was struck by a moving train and injured. *Held*, under the act of 1911, p. 275, No. 284, known as the lookout statute, it was defendant's duty, in the operation of its trains, to keep a constant lookout for persons upon its track, and the burden is upon the defendant to show that a constant lookout was maintained.  (Page 132.)

2. MASTER AND SERVANT—INJURY TO SERVANT—SUFFICIENCY OF EVIDENCE. —Evidence *held* sufficient to show servants of defendant, in charge of its train, guilty of negligence which was the cause of plaintiff's injury.  (Page 134.)

Appeal from Saline Circuit Court; *W. H. Evans,* Judge; affirmed.

*E. B. Kinsworthy, T. M. Mehaffy, H. S. Powell* and *T. D. Crawford,* for appellant.

1.  The court erred in its charge as to the duty of railroads under the "lookout" statute.  As between co-employees there is no presumption of negligence.  98 Ark. 202; 74 *Id.* 19; 79 *Id.* 76; 90. *Id.* 326; 91 *Id.* 308; 84 *Id.* 372.

2.  Defendant's instruction No. 2 should have been given.  It was error to give No. 7 for plaintiff and refuse No. 7 for defendant and No. 11 as asked.  Where a trainman puts himself in a place of danger and failed to keep a lookout he is guilty of contributory negligence. 105 Ark. 364; 100 *Id.* 380.  Contributory Negligence is a bar.

*W. R. Donham* and *Hoeppner & Young,* for appellee.

1.   Railroads are liable notwithstanding the contributory negligence of coemployees if a proper lookout is not kept.   Act 284, 1911, 275; 151 S. W. 246; 155 *Id.* 510; 157 *Id.* 408.

2.   The duty to keep proper lookout applies to yards, switches, etc., and is for the benefit of all employees.   88 Ark. 204; 83 *Id.* 61; 80 *Id.* 528; 78 *Id.* 22.

3.   The seventh instruction is too favorable to appellant, but if the jury fails to follow an erroneous charge it is not error.   154 S. W. 203; 89 Ark. 154.

4.   It is clearly proved that no lookout was kept and no signals given.   Cases *supra.*

McCulloch, C. J.   The plaintiff, John D. Staples, had been in the employment of the defendant, St. Louis, Iron Mountain & Southern Railway Company, for a great many years as tie inspector and superintendent of loading ties.   His duties were to go out with a tie train, consisting of box cars into which ties were to be loaded, and boarding cars for the crew, and superintend the loading of ties and inspect the same.   He was struck and injured by his train at Farrell, a station in Saline County, and instituted this action to recover damages.   His injuries were very severe, and the jury awarded him a substantial amount as compensation therefor, and it is not claimed that the amount of the verdict is excessive.

The tie train was equipped with the usual complement of men, conductor, engineer, fireman and two brakemen, who performed the usual duties with respect to the movement of the train, except that the conductor took orders from the plaintiff concerning the places where the ties were to be loaded and the setting out of cars. · There was a force of men engaged in loading ties, and they were in charge of a foreman.   A lot of ties were being loaded about two miles south of Farrell, when a regular freight train was expected from the north, and when the smoke of that train was seen at Farrell, the tie train was moved up to Farrell to permit the freight train to pass. The tie train headed in on the passing track when it

reached Farrell, and cut off the caboose, leaving it stand-
ing on that track, the freight tráin then being headed
south on the main track.   Plaintiff had instructed the
conductor to have a certain car set out on the spur track,
and while this was being done he remained for a time in
the caboose, making out a waybill for that car.   After
finishing the performance of that duty, he stepped out
from the caboose and walked on up to the train to look
for the train crew to give some instructions about where
he wanted to go, as they had completed gathering the ties
south of Farrell.   When the tie train cut loose from the
caboose, it headed north on the passing track until it
passed the switch of the spur track, and then backed in
on the spur track, leaving the car there which was to be
set out.   After this was done, it headed back on the side-
track and stopped there to await the passage of the
freight train which was then beginning to pull out.   Noth-
ing was left to be done but to back down for the purpose
of coupling on to the caboose.   While the tie train was
standing there, the plaintiff came up to the end of the
train, and started to walk northward between the two
tracks, alongside of the rear box car of the standing tie
train and the freight train moving southward on the
main track.   Before proceeding very far he noticed a
bad order car in the moving freight train.   He and other
witnesses testified that the side of the car was torn loose
and was hanging down so that it nearly touched the side
of the box car on the passing track and hung so low that
it was dangerous for a man to stand between the tracks.
Plaintiff testified that, when he saw this dangerous situ-
ation, he turned back and stepped on the passing track
behind the rear box car of the tie train and stood there
until the bad order car moved past, and then he walked
down the track a few steps further and stopped momen-
tarily to watch the passing train, when the tie train,
without notice or warning and without his knowledge,
backed down against him and knocked him down.   He
testified that, when the car struck him, he had stepped

out on the end of the ties and only lacked a few inches of being entirely in the clear.

The evidence tended to show that no signals of any kind were given, either by bell or whistle, and that no lookout was kept from the end of the box car.

Plaintiff also testified that, when the car struck him, he was standing near the end of the ties, a position where the engineer of the tie train could have seen him if he had been looking.

The injury occurred on the 31st day of May, 1912, and the case comes within the operation of the new lookout statute enacted by the General Assembly of 1911.

The court gave the following instruction on the question of keeping a lookout:

"7.   You are instructed that it is the duty of all persons running trains in this State to keep a constant lookout for persons upon the railroad track, and that the burden of proof is upon the defendant in this case to show that this duty was performed by keeping such constant lookout."

It is contended that it was error to give this instruction.   The basis of the contention is that, as between co-employees operating the same train, there is no presumption of negligence and no burden of proof rests upon the defendant.

In the first place, it may be said, in reply to this contention, that the evidence is undisputed that the plaintiff had nothing to do with the operation of the train so far as its movements were concerned, except to give directions to the conductor where the ties were to be loaded and when cars were to be set out.   He was not in control of the train in the sense that he was responsible for failure to keep a lookout or to give signals.   The train, as to those matters, was entirely in charge of the conductor and other employees in the customary way.

The lookout statute was, therefore, applicable in the plaintiff's case, even though he was guilty of contributory negligence in occupying a place of danger, and that

statute places the burden of proof upon defendant to show that a proper lookout was kept.

It will be noted that the instruction does not declare that proof of the injury made a *prima facie* case, but it is limited to the burden of showing that a proper lookout was kept, and, therefore, the instruction does not offend against the rule announced by this court in *St. Louis, I. M. & S. Ry. Co.* v. *Gibson,* 107 Ark. 431, 155 S. W. 510.

This statute applies to trains switching in the yards, and inures to the benefit of employees as well as all others.   See cases cited on brief.

Counsel for defendant stress the fact that the complaint contains an allegation to the effect that the plaintiff was in charge of the tie train.   It is true that, in the introductory part of the complaint, this allegation appears, but it is later qualified by a direct allegation that other servants were in charge of, and managing, the tie train.   We think there is no importance to be attached to this preliminary statement of the complaint, for it was qualified to show just what relation the plaintiff occupied toward the control of the train; and the undisputed testimony shows that he did not control the movements of the train further than to give directions to the conductor about the place of loading ties and what cars were to be handled.

For the reasons already stated, instruction No. 2, requested by the defendant was properly refused.   There was no evidence on which to base an instruction that plaintiff controlled the movements of the train which caused his injury.   Besides that, even if there had been any evidence that he controlled the train, the instruction was too broad, in that it told the jury that if "the train crew were under his direction or orders as to where and when to switch the cars, and as to when and where to move the train in doing said switching and in picking up ties or in switching ties or loading ties, and that, while they were so engaged, plaintiff was injured as alleged

by the train backing against him," then the verdict must be for the defendant.

The rulings of the court in modifying certain other instructions are controlled by the same view, and we are of the opinion that no prejudicial error was committed by the court.

The evidence was sufficient to show that the servants of defendant in charge of the train were guilty of negligence in moving the car without giving any signals or other warning, and in failing to keep a proper lookout. The evidence also was sufficient to show that these acts of negligence caused the plaintiff's injury.

The question of contributory negligence was submitted to the jury upon instructions, the correctness of which is not challenged, and the evidence was sufficient to support the verdict on that issue. The judgment is therefore affirmed.