MISSOURI PACIFIC RAILROAD COMPANY v. CURCIO.

Opinion delivered May 19, 1924.

1. APPEAL AND ERROR—HARMLESS ERROR.—In an action against a carrier for injuries received by an employee of a traveling show while crossing defendant's track to a sleeping car located in the defendant's yards, a contract with the show company relating to the defendant's liability for injuries during transportation had no application and should have been excluded from consideration, so that error in construing the contract was not prejudicial.

2. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—Where plaintiff adduced substantial testimony on all the issues involved, the verdict of the jury will not be disturbed, though defendant's testimony preponderates in the number of witnesses.

3. RAILROADS—LOOKOUT STATUTE.—Crawford & Moses' Dig., § 8568, requiring trainmen to keep a lookout, applies to the switching of cars in railroad yards, notwithstanding contributory negligence of the person injured.

Appeal from Monroe Circuit Court; *George W. Clark,* Judge; affirmed.

*Thomas B. Pryor* and *Daggett & Daggett,* for appellant.

1. The contract between the show company and the railroad company is not void on the ground of public policy in that it permits the carrier to contract against liability for its own negligence. Such contracts are sustained on the ground that, in the performance thereof, the carrier is not acting as a common carrier. 5 R. C. L. § 668; 66 Fed. 506; 31 N. E. 650; 22 N. W. 215; 20 Sup. Ct. Rep. 385. As a matter of law, under the undisputed evidence, the plaintiff was charged with knowledge of the contract and all provisions therein, and was bound by it. 83 N. E. 710. The verdict should have been directed for the defendant. It was not proper to submit the question of the plaintiff's knowledge of the contract to the jury in any form. See also 130 Fed. 870; 66 N. Y. 313.

2. If, as an invitee, plaintiff deviated from the ordinary and regular route of ingress and egress provided, and entered a portion of the yards in which it was unnecessary to go in order to reach the cars, he then

became a trespasser, and within the protection accorded him by the "lookout statute"; but one in such position, regardless of the statutory duty, can claim no more than that the train shall not be operated negligently, and that he shall not be wantonly or wilfully injured if his peril is discovered in time to prevent.

*Bogle & Sharp* and *Emerson & Donham,* for appellee.

1.  The contract is not valid nor enforceable. It was entered into in the State of Missouri, and is to be construed according to the laws of that State, and there a carrier cannot contract to relieve itself against damages caused by negligence. 88 Mo. 239-244; Rev. Stat., Mo. 1919, § 10018. It is also void because prohibited by the laws of the United States. 159 N. W. 422; U. S. Comp. Stat. 1918, § 8604A. Plaintiff was not bound to know of the existence of the contract by reason of the circumstances with which he was surrounded, as contended by appellant. 34 N. Y. Supp., 1039; 26 N. E. 524; see also 159 N. W. 428; 166 Fed. 526; 87 Fed. 42. Plaintiff was in the position of a passenger for hire, and entitled to the high degree of care to avoid injuring him that is due to a passenger. 100 Pac. 833. As further sustaining the proposition that the contract is not enforceable, see 89 Atl. 87, 204 Pa. 304; 43 S. E. 930; 248 U. S. 361; 39 Sup. Ct. Rep. 108.

2.  Plaintiff was injured as the result of negligence on the part of appellant's employees, and it is immaterial whether he was a trespasser, licensee or invitee, and the issue of negligence has been settled by the jury's verdict. The lookout statute applies to moving trains in railroad yards and to switching cars therein. C. & M. Dig. § 8568; 78 Ark. 22, 28; 83 Ark. 61; 88 Ark. 204-10; 96 Ark. 243-9; 111 Ark. 129; 80 Ark. 528, 535; 107 Ark. 431; 110 Ark. 444, 448; 108 Ark. 326; *Id* 396; 93 Ark. 127; 125 Ark. 507; *Id.* 223; 137 Ark. 595; 132 Ark. 431; 146 Ark. 236; 136 Ark. 310; 123 Ark. 94.

McCulloch, C. J. The plaintiff, Antonio Curcio, is a native of Italy, a naturalized citizen of the United

States, and a musician by profession. While employed as a member of a band of musicians accompanying a traveling show, he came to Little Rock on October 7, 1922, for a week's engagement. The entire outfit traveled in special coaches, which were stored in the railroad yards, and the members of the outfit lived in the coaches during their stay. There was a pathway along the track from the coaches to a nearby street, which afforded a way for the people occupying the cars to go in and out between the street and the cars, and one night during the stay in Little Rock plaintiff, along about midnight, left the coach, walked along the pathway to the street and thence to a restaurant, where he made a small purchase, and on his return, after having traveled down the track to a point opposite the cars, he turned across the track, and was knocked down and run over by a moving box-car which was being switched in the yard.

The show train was brought to Little Rock over the line of the defendant, Missouri Pacific Railroad Company, under special contract with the show company; the cars were stored in the yards of the defendant company, and it was a car operated by defendant company being switched in the yard which struck and ran over the plaintiff. This is an action to recover damages for the injuries received. Plaintiff's foot and ankle were so badly mangled that it was necessary to amputate the leg above the ankle, and there were two additional operations, shown to have been necessary on account of the original injury. Plaintiff recovered as damages a sum of money not claimed to be excessive, if he was entitled to recover at all.

Negligence of defendant's servants is alleged in operating the train of cars, which was being switched in the yard without keeping a lookout and without giving any signal or warning of the movement of the cars. Appellant denied the allegations of negligence and also pleaded as a further defense the special contract with the show company, which contained a clause exempting

the defendant from liability for damages caused by negligence of defendant's servants or from any other cause.

The contract between defendant and the show company provided for transportation by the railroad company in cars to be furnished, some by each company, of the employees and paraphernalia and the wild and domestic animals of the show company, from place to place, for transportation charges specified in detail in the contract, and the clause of the contract under which defendant claims exemption from liability reads as follows:

"In consideration of the agreement of said party of the first part to run said regular or special train or trains as hereinbefore specified, and at and for the reduced rates aforesaid, and in further consideration of the fact that many of the animals to be transported as aforesaid are wild and ferocious, and not such as said party of the first part is by law required to receive and transport as a common carrier, it is further understood and agreed that the said party of the first part shall be, and is hereby, wholly released from responsibility for any and all damages, loss or injury which may accrue to said party of the second part, and to the cars and coaches and to the show and property of said party of the second part and on account of death of or injury to the employees of said party of the second part or of or to all persons connected with said show in any capacity whatsoever, whether such damage, loss, death or injury result from the negligence of said party of the first part, its servants, or agents, or otherwise, but if, notwithstanding this exemption from liability, said party of the first part shall be held liable in any legal proceedings for loss or damage suffered by said party of the second part, then, and in that event, it is hereby agreed that such damages shall be and they are hereby liquidated and stipulated not to exceed the actual value of the animals or the property aforesaid, which, for the purpose of this agreement, is by said second party stipulated, agreed and represented in no case to exceed the sum per head for each animal as follows, to-wit: (Here follows a list of valuations).

The contract contained an additional clause whereby the show company undertakes to indemnify the defendant "against any and all suits, claims and damages of all persons whomsoever alleging liability for loss or damage to cars or railway equipment, or to baggage or other property or damage resulting from any injury to or death of any person or persons employed by said party of the second part or connected with said Wortham-Waugh-Hofer Greater Alamo Shows, or permitted by said second party, his servants or agents, to ride in, about or upon said cars and coaches, or to be transported as aforesaid, or to be upon and about the premises of said first party, whereby or by reason whereof such persons may be killed or injured while being transported in or upon said cars or coaches, or while they may be in or upon the premises of said first party."

This contract was admitted in evidence over the objections of plaintiff's counsel, and the court submitted the question of defendant's liability, so far as it was affected by this contract, upon instructions which told the jury that plaintiff was not bound by the contract of exemption from liability unless he had notice thereof. It was contended below, and is contended now, that these instructions were erroneous, and that there should have been a peremptory instruction in favor of defendant under the undisputed evidence as to the execution of this contract.

The plaintiff testified that he was employed, not by the show company, but by one Miller, the leader of the band, who agreed to pay plaintiff a stipulated salary and pay his transportation. Plaintiff testified also that he had no notice of the contract between the show company and the railroad company. Counsel for plaintiff contend that, under the circumstances which plaintiff's testimony tended to establish, plaintiff was not bound by the contract without notice thereof and that the court properly submitted that question to the jury.

After consideration of the terms of the contract, we have reached the conclusion that it has no bearing on the

question of appellant's liability, and should have been excluded from the consideration of the jury, for the reason that the subject-matter of the contract was transportation of the equipment, paraphernalia and employees of the show company, and had no relation to the question of liability for damage except such as arose during the period of transportation. The instructions given by the court were therefore too favorable to the defendant, and it cannot complain of the ruling of the court.

Many decisions in other States are cited by counsel on both sides, but they all relate to cases of injury to persons while being transported. No case has been brought to our attention which involves the application of a contract similar to this one exempting a carrier from damage resulting from negligence where the injury occurred, not during transportation, but while the injured person was in the yard or on the tracks of the railroad company. This contract related, as before stated, altogether to the matter of transportation. The storage of cars in the yard of the railroad company was an incident to the contract of carriage, and plaintiff's injury on the track while returning to the car upon the implied invitation of the railroad company to use the approach to the stored cars had no relation to the contract of carriage and was not included in the exemption from liability.

If, as contended by the plaintiff, he was injured while crossing the track at a point which formed a part of the place of crossing between the street and the stored cars, he was an invitee and entitled to protection as such; or if, on the other hand, as contended by the defendant, plaintiff was injured at a point not forming a part of the place of egress or ingress, he would be a trespasser and entitled to the protection afforded by the lookout statute. The contract of carriage had no relation to plaintiff's injury, and it was not embraced within the exemption. In other words, the exemption related to liability during transportation and not to liability arising at any other time, and the fact that the plaintiff

was an invitee of the railroad company in crossing the track to reach the stored cars did not bring the liability within the terms of the exemption. We find it unnecessary therefore to discuss the question whether or not the exemption applied to plaintiff at all under any circumstances, or whether notice to him of the contents of the contract was essential to his being bound thereby. We pretermit those questions entirely, and hold that the contract, if applicable to plaintiff at all, was confined to the question of liability arising during transportation.

There is a conflict in the testimony as to the circumstances under which plaintiff was injured. The testimony adduced by the defendant preponderates in number of witnesses, but there was substantial testimony adduced by the plaintiff on all the issues involved, and under well settled practice it becomes our duty to leave the verdict of the jury undisturbed.

The injury occurred in the Little Rock yard of the defendant company known as the "east yard," being situated in the eastern part of the city. Second Street runs east and west, and the yards lie south of that street, the tracks running in a southeasterly direction from the intersection with Second Street. There are storage tracks and switch tracks on both sides of the main track, the tracks on the east side of the main track being designated and known as the "new yard," and the tracks on the west side of the main track being designated and known as the "old yard." The show cars were stored on one of the tracks in the new yard, on the east side of the main track, and there was a pathway running northward along the tracks to Second Street. There is a conflict in the testimony as to which of the tracks the show cars were stored on. The testimony adduced by plaintiff tends to show that they were stored on the third of fourth track east of the main track, whereas the testimony adduced by defendant tends to show that the cars were stored on the second track east of the main track. There is also a controversy as to the track on which plaintiff was injured. His testimony and that of the wit-

ness introduced by him tended to show that plaintiff walked down the main track from Second Street, and, as he attempted to cross the third track east of the main track, he was struck by a box-car which was being switched. Defendant's witnesses testified that the switching was being done on the second track west of the main track. Plaintiff and the eye-witness introduced by him testified that the box-car which struck plaintiff was moving to the north when it struck plaintiff as he was crossing the track, and that there was no lookout kept and no warning given. It is not contended by any of defendant's witnesses that a lookout was kept on the north end of the string of cars being switched, but the contention is that the cars were not moving northward at all but were standing on the track and were pulled south away down the track from where plaintiff crossed. There is no explanation attempted to be given by defendant's witnesses as to how plaintiff's injury occurred. It is undisputed that there was a sharp down-grade from the north end of the yard to the south end and that when cars were stored there they had to be scotched, or brakes left on, in order to prevent them from rolling towards the south. Defendant's witnesses testified that there were thirty-six box cars in the string of cars standing on the track, that a switch engine was connected with them, and that they were all drawn southward, and that there was no movement of the cars at all toward the north. Defendant's witnesses all testified that it was impossible for an engine of the type used on this occasion to push a string of thirty-six cars northward—that a force brought against the south end of the string of cars sufficient to move them upgrade to the north would tear out the draw-heads. All of this testimony adduced by the defendant directly conflicted with the statements of plaintiff and his witness to the effect that the box-car on the north end of the string was uncoupled from the other cars, that it was pushed northward as much as a car-length or half a car-length, when it struck plaintiff, and then rolled back down the track. We must treat that

conflict as settled in plaintiff's favor by the verdict of the jury.

It has been decided by this court that the lookout statute is applicable to a train of cars being switched in the yard. *Little Rock & H. S. R. Co.* v. *McQueeney*, 78 Ark. 22; *St. Louis S. W. Ry. Co.* v. *Graham*, 83 Ark. 61; *St. L. I. M. & S. Ry. Co.* v. *Staples*, 111 Ark. 129. The statute as it stands now (Crawford & Moses' Digest, § 8568) applies, notwithstanding contributory negligence of the person injured, to failure of the servants of the railway company to keep a lookout, and the issue in this case was whether or not the failure to keep a lookout caused the injury. It is not contended on the part of the defendant that any lookout was kept on the north end of the string of cars, so the principal question for the determination of the jury was whether or not plaintiff was injured by a box-car moving northward. Unless the injury occurred in that way, there was no liability, for, if the train was not moving northward, there was no duty on the part of the servants of the company to maintain a lookout on that end of the train, and, as the switch engine on the south end of the train was manned by operatives who kept a lookout, there was no liability for injury caused by the movement of the train towards the south.

The vital issue in the case was submitted to the jury under proper instructions, and, as there was evidence to sustain the verdict, the judgment must be affirmed, and it is so ordered.